Leon LAMB, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 23887.

United States Court of Appeals
Ninth Circuit.

July 22, 1969.

Cope R. Gale (argued), of Martinson, Gale & Warren, Moscow, Idaho, for appellant.

Jay Bates (argued), Asst. U. S. Atty., Sylvan A. Jeppesen, U. S. Atty., Clarence D. Suite, Asst. U. S. Atty., Boise, Idaho, for appellee.

Before HAMLIN, MERRILL and ELY, Circuit Judges.

HAMLIN, Circuit Judge.

Leon Lamb, appellant herein, was convicted after a jury trial of a violation of 18 U.S.C. § 2421 (transporting a female in interstate commerce for the purpose of prostitution). This appeal from the conviction is properly brought under 28 U.S.C. § 1291. We find no merit in the appeal, and therefore affirm the conviction.

The facts need not be set forth in detail. Viewing them as we must in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the jury's verdict is supported by substantial evidence. Appellant Lamb and Linda Ann Stokes, both of whom were married but not to each other, met in 1966 while they were working in a bar in Mountain Home, Idaho. They began living together as man and wife, and Mrs. Stokes went to work as a prostitute to help the appellant meet his child support payments. After a short time, the couple moved to Boise, Idaho, where Mrs. Stokes was arrested for prostitution. They then went to Spokane, Washington, for approximately a week. Lamb then drove Mrs. Stokes from Spokane to Wallace, Idaho, and took her to a house of prostitution. Mrs. Stokes then resumed

her work as a prostitute. Thus, a violation of section 2421 is clearly made out.

■ Lamb's first contention on this appeal is that certain statements made by him to police officers and admitted at his trial should have been suppressed because he made them without being warned of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record shows that a few days after Mrs. Stokes began working as a prostitute in Wallace, Idaho, she had to be taken to a hospital. Shortly before she was due to be discharged, two police officers were summoned by hospital officials because the officials were uncertain that Mrs. Stokes would be able to pay her bill. When the policemen arrived at Mrs. Stokes' room, Lamb was talking with her. One of the policemen asked Lamb to wait in the hall while he talked to Mrs. Stokes; and Lamb and the other officer went into the hall. Both officers testified that at that time Lamb was not under arrest, that he was not known to them, and that he was not under investigation for anything. In the hall, the other officer asked Lamb who the girl was, and in the course of the conversation Lamb stated that he had brought her from Spokane to Wallace, and that she was working as a prostitute. Lamb was then briefly questioned by the other officer, but only to ascertain his name. At the time the officers testified to these facts the defense made no objection, although the defense did move to reject the testimony of the officers during the defendant's case-in-chief. This motion was rejected by the trial judge, and the appellant here renews his objection that his admissions should have been excluded because he was not warned of his Miranda rights.

However, Miranda warnings are necessary only "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. Non-custodial interrogation does not violate the ruling of Miranda. Lucas v. United States, 9th Cir., 1969, 408 F.2d 835. There was no custodial interrogation under the facts of this case. Lamb was not placed under arrest, or even told that he could not leave the hospital. When the police arrived at the hospital they did not know who he was. He was not questioned in connection with a specific crime; rather, the police were trying to secure information about Mrs. Stokes. Furthermore, Lamb was questioned in the hall of a hospital, where none of the psychological pressures of police station questioning were present.

Appellant's reliance on Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed. 2d 311 (1969) and Rosario v. Guam, 391 F.2d 869 (9th Cir. 1968), is misplaced. The facts in these cases are distinguishable from those in the instant case. In each case the official knew before he spoke to the defendant that a crime had been committed, and he questioned the defendant specifically in connection with that crime. Here, on the other hand, the officers did not question Lamb in connection with a particular crime; they did not even know a crime had been committed at the time they talked to Lamb. We hold that in this case no Miranda warnings were necessary.

The appellant's second contention is that the United States Attorney's suppression of evidence vital to the defense at his trial denied him a fair trial. This claim is equally without merit. The record shows that while she and Lamb were in Spokane, Mrs. Stokes stayed with her sister and brother-in-law, Mr. and Mrs. Charles Smith. The government subpoenaed both of them for trial, but at the time of trial Smith, who was in the Navy, had been transferred to Guam. Mrs. Smith was unable to leave her four children, so the government released her from the subpoena and she did not testify. During Mr. Smith's testimony he stated that Mrs. Smith had said that Mrs. Stokes "always made up stories." This testimony was stricken because it was hearsay. The appellant contends that had Mrs. Smith testified that Mrs. Stokes always made up stories, it might have raised a reasonable doubt in the

jury's mind as to the testimony Mrs. Stokes gave at the trial. Thus, concludes the appellant, the government's releasing of Mrs. Smith from the subpoena, after assuring the defense that she would testify, denied him a fair trial.

■ There is no support in the record for the statement that the government "assured" defense counsel that Mrs. Smith would testify. But there is a further reason that this contention is groundless. All the cases cited by the appellant concern circumstances in which the government concealed some exculpatory fact or witness from the defense. Here there was no concealment. The defense knew where Mrs. Smith was. Also, the defense knew as much about what Mrs. Smith could testify to as did the prosecution. Yet, after the defense learned that Mrs. Smith had been released from her subpoena, it made no attempt to secure a continuance to bring her before the court. "Evidence is not suppressed or withheld if the accused has knowledge of the facts and circumstances or if they otherwise become available to him during the trial." United States ex rel. Thompson v. Dye, 221 F.2d 763, 767 (3rd Cir. 1955). It follows that the government's releasing of Mrs. Smith from her subpoena did not deny the appellant a fair trial.

The conviction is affirmed.