321 A.2d 92.

STATE *vs.* MAUREEN A. RYAN.

JUNE 20, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

344

DORIS, J. This is an indictment which charges that the defendant, on August 11, 1970, did unlawfully kill William P. Ryan. The defendant, Maureen A. Ryan, was tried to a Superior Court jury and was found guilty of manslaughter. The case is before this court on the defendant's appeal from the judgment entered on that verdict.

The record discloses that on August 10, 1970, at approximately 9 p.m., William P. Ryan, age 21 months and son of defendant, was transported to Roger Williams Hospital by members of the rescue squad of the Providence Fire Department in response to an emergency call by defendant for assistance. At the hospital, it was ascertained that the child had multiple bruises on the abdomen, head and face. At 1:20 a.m., August 11, 1970, William P. Ryan expired. The cause of death was listed as pulmonary congestion

and edema resulting from head injuries. The defendant was charged in the District Court and bound over to the grand jury, which returned an indictment on November 15, 1971. Trial began on November 8, 1972, and the jury returned a verdict of guilty on November 14, 1972.

John B. Fiore, a sergeant of the Providence Police Department, testified that on August 10, 1970, in response to a radio call, he proceeded to the accident room of Roger Williams Hospital where he found William P. Ryan, who had been transported to the hospital by members of the rescue squad of the Providence Fire Department. Sergeant Fiore stated that he observed bruises on the forehead and face of the child. He related that he left the accident room at the request of the attending physician to obtain information from the mother, Maureen A. Ryan, who was outside the accident room. The police officer stated that defendant told him that she had spanked her son very hard across the buttocks three times that night because he refused to eat his supper, and that she had placed him in a chair at the kitchen table and had then turned away to perform other duties. After a few minutes she heard a thud, turned and saw the child lying on the floor. She stated that after trying to revive the child, she called the rescue squad of the Providence Fire Department for assistance. Sergeant Fiore further testified that before questioning defendant he had advised her of her constitutional rights. After obtaining this information, Sergeant Fiore transported defendant to police headquarters.

Henry Lariviere, a Providence police patrolman, testified that he was present at Roger Williams Hospital on August 10, 1970, and heard Sergeant Fiore question defendant and advise her of her constitutional rights. He further testified that defendant was crying and upset, but seemed to understand what was going on. He stated that upon orders from Sergeant Fiore he proceeded to the home of defendant and

after observing bruises on the body of Kathleen Ryan, twin sister of William, brought the child, Kathleen, to Roger Williams Hospital.

Doctor Augustine Colella, Associate State Medical Examiner, testified that photographs of the deceased (state's exhibits 1 thru 5) were taken in his presence at the time of the autopsy which he performed on the body of the deceased child, and that the pictures were fair representations of the child's body as it appeared at that time. He stated that he found multiple contusions on the scalp, face, arms, legs and torso of the child and that the cause of death was pulmonary edema as a result of head injuries, and that there was evidence of hemorrhage over the brain, laceration and hemorrhage of the liver, and hemorrhage of the abdomen.

Theresa Milliken, who described herself as a neighbor and long-time friend of defendant, testified that she was present at the Roger Williams Hospital when Sergeant Fiore was talking to defendant and that she did not hear the police officer advise defendant of her constitutional rights. She further stated that defendant was in a daze during the time she was at the hospital.

The defendant, Maureen A. Ryan, testified that she was not advised of her constitutional rights by Sergeant Fiore until after she had given him the statement about the events involving her son. She stated that she had tapped William three times on the buttocks and then placed him in a chair. She related that she heard him fall to the floor and that "* * * he was all stiffened up and his eyes were rolled back in his head." The defendant testified that she tried to revive the child and then called the rescue squad for assistance.

The defendant asserts that the trial justice erred when he refused to exclude her statement made at Roger Williams Hospital. She argues that since she was in police

custody and not advised of her constitutional rights she was deprived of due process guaranteed under the constitution. In the alternative she argues that she was in such a state of mind that she was unable to comprehend or understand the warnings, and therefore the questioning should have been deferred until she was able to comprehend or understand what was transpiring.

The state argues that since defendant was not in custody at the time she made the statement to Sergeant Fiore no requirement existed for the giving of the warning as to her constitutional rights.

In *Miranda* v. *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court stated that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. The defendant must be warned prior to questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be provided for him prior to any questioning, if he so desires. The individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. The warnings, the Court concluded, are necessary "* * * when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." *Id*. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725.

In accordance with the established practice, the trial justice conducted a voir dire hearing to determine whether the statement made by defendant should be admitted. The trial justice found that defendant was not in custody

and that the questioning by Sergeant Fiore did not constitute an accusatory investigation.

It is apparent to us as it was to the trial justice that when defendant was questioned at the hospital, Sergeant Fiore was merely making a general inquiry into the circumstances of a possible assault on the child. At the time he knew nothing of the time, place, or circumstances under which the child had been assaulted. Furthermore, at that point in time, he had no reason to suspect defendant any more than anyone else as the person responsible for the assault. Non-custodial interrogation does not violate the ruling in *Miranda*. *Lamb* v. *United States*, 414 F.2d 250 (9th Cir. 1969). Under the circumstances here, we hold that there was no requirement that defendant be advised of her rights under the *Miranda* rule. The trial justice was correct in refusing to exclude the statement by defendant.

The defendant next contends that the trial justice erred when he refused to strike the testimony of Sergeant Fiore after it became apparent that the statement which he used to assist him in testifying had been prepared and reduced to writing by him only three weeks before the trial. He stated that the statement resulted in part from his own recollection and in part from the original offense report of the Providence Police Department, which he had prepared and filed in August 1970. The defendant argues that since there was no definitive testimony as to what part of the statement was from recollection and what part was based on the police record, the testimony should have been stricken. The written statement prepared by Sergeant Fiore and the police record were both available to defendant to show any inconsistencies between them and the in-court testimony. The defendant has not pointed out to us any inconsistencies, nor have we found any, and we therefore find no merit in her argument.

We next consider defendant's contention that the trial

justice erred in allowing testimony that Kathleen Ryan, the twin sister of the deceased child was admitted to the hospital on August 10, 1970, suffering from bruises, and that he erred in allowing into evidence the hospital records of said admission. The defendant contends that the rule which permits a court, in its discretion, to admit evidence of other criminal activity is relevant only for the purpose of showing motive or intent and that since manslaughter does not require a motive or intent, the admission of the testimony and evidence was irrelevant and prejudicial.

In the trial of a criminal offense, evidence of other and distinct criminal acts is generally prejudicial and inadmissible, yet it is conceded that evidence of other acts, representations and conduct at different times, even of a criminal nature, may be received when it is interwoven with the offense for which defendant is being tried, or directly supports a finding of guilty knowledge in the perpetration of that offense. Any circumstance that is incidental to or connected with the offense under investigation in such a way that it tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like, is proper evidence according to the overwhelming weight of authority. This principle, to be invoked with caution, depends upon the facts in each individual case for its proper application. It has been applied in all types of crimes, from the highest felonies to ordinary misdemeanors, provided such testimony goes to establish a material fact in the chain of proof of the crime in issue. *State v. Mastracchio,* 112 R. I. 487, 312 A.2d 190 (1973); *State v. Colangelo,* 55 R. I. 170, 179 A. 147 (1935).

As stated, the rule is not restricted to proving an element of a particular offense as contended by defendant but is applied to establish a material fact in the chain of proof of the crime in issue. Here, according to the charge of the trial justice, the state had to prove an unlawful killing or

one that resulted from defendant's beating, striking, kicking or wounding William P. Ryan. The fact that Kathleen Ryan was admitted into the hospital with bruises on her body on the same night as her deceased brother was evidence which could show a tendency on the part of defendant to beat, strike and bruise her children. Under the circumstances, the admission of such evidence was relevant to establish a material fact in the chain of proof of the crime in issue. The evidence was properly admitted by the trial justice and its admission was not prejudicial to defendant.

The defendant next argues that the trial justice erred in denying her motion to strike the photographs of the deceased (state's exhibits 1 thru 5). She contends that the photographs which had been admitted into evidence contained shadows and were not fair and accurate representations of the deceased and were therefore prejudicial and inflammatory. *State* v. *Miller,* 52 R. I. 440, 161 A. 222 (1932). It is well settled that in a prosecution for homicide, photographs of the victim which are shown to be faithful representations of the victim at the time in question are, in the discretion of the trial court, admissible into evidence as an aid to the jury in arriving at a proper understanding of the evidence as proof of the *corpus delicti,* the extent of the injury, the condition and identification of the body, or for their bearing on the question of the degree of atrociousness of the crime, even though such photographs may tend to have an influence beyond the strict limits of the purpose for which they were introduced. *State* v. *Winston,* 105 R. I. 447, 252 A.2d 354 (1969); *see* 2 Wharton, *Criminal Evidence* §§686-688; 159 A.L.R. 1413; 73 A.L.R.2d 769.

Here, Dr. Colella testified that the questioned photographs were a fair and accurate representation of the victim's body at the time of the autopsy which he performed on William P. Ryan. Further, during cross-

examination by defense counsel, Dr. Colella pointed out to the jury on each photograph which marks on the body were bruises and which were shadows. The admission of the photographs under the rule in *Winston, supra,* is discretionary with the trial justice and his decision will not be reversed unless it is shown that he has abused his discretion. The defendant has not shown us that the use of the disputed photographs amounted to an abuse of the trial justice's discretion.

The defendant's appeal is denied and dismissed, and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*William J. Gearon,* for defendant.