**STATE**

v.

**Theodore LONG and Timothy Nichols.**

**No. 83–549–C.A.**

Supreme Court of Rhode Island.

Feb. 28, 1985.

Reargument Denied March 21, 1985.

Dennis J. Roberts II, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., Providence, for plaintiff.

Robert B. Mann, William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendants, Timothy Nichols and Theodore Long, from a judgment of conviction on an indictment charging them with robbery in violation of G.L.1956 (1981 Reenactment) § 11–39–1. The case was tried before a justice of the Superior Court sitting with a jury that re-

turned a verdict of guilty against both defendants. At trial the following facts were established.

Shortly after 8 p.m. on May 1, 1981, Thomas Suave was preparing to close the G & H Arco Station in Warren, Rhode Island, when a red and black Cougar drove up outside the station. A heavyset man emerged from the vehicle and asked Suave where the cigarette machine was, then instead went over to the soda machine. Within a short time a second man, who was the same height but much thinner than the first man, emerged from the car with a brown bag and a .357 Magnum, the muzzle of which he put to the bridge of Suave's nose. The gunman ordered Suave to produce the money from the store's cash register, threatening to kill Suave if he resisted, so Suave handed the heavier set man the money. The heavier man then ordered Suave to produce his billfold, from which $300 was removed. The two men finally left the station, got into their car, and drove away toward Barrington.

Suave reported the robbery to the Warren police and assisted in the preparation of a composite sketch of the robbers. On October 11, 1981, five months after the incident, two Warren police officers visited Suave at his home. Detective Vincent D. Soboleski and Detective Ely Barkett presented Suave with an array of photographs and witnessed his identification of defendants Nichols and Long. Suave positively repeated this identification in court.

Later on October 11, 1981, Suave went to the Warren police station to sign a statement and took note of the same photographs he had previously examined. From these photographs he repeated his previous identification of defendants Long and Nichols.

On appeal, defendants raise the following issues: (1) that certain questions exist in regard to the photographs, that is (a) whether it was error to allow the police who conducted the photo array to testify about their observations, (b) whether the mug shots of defendants should have been admitted as evidence, and (c) whether it was error to allow the in-court identification because the defendants were allegedly unaware of the repetitive viewings of the photographs; (2) that the trial justice erred in instructing the jury on the element of reasonable doubt; (3) that defendants were denied their right to a speedy trial; (4) that the trial justice abused his discretion in allowing the witness to testify to his unique reasons behind his fear at the time of the robbery; (5) that defendant Long was denied the right to counsel in violation of the Sixth Amendment of the United States Constitution and article I, section 10, of the Rhode Island Constitution; and finally (6) that the trial justice committed error in allowing the introduction of money taken from the service station as evidence.

I

*The Identification Process*

(a)

The defendants argue that the testimony of the police officers regarding their observations of the pretrial identification should not have been admitted into evidence because it was clearly hearsay.

■ Pretrial identifications generally have equal or greater testimonial value than those made in court because these identifications occurred closer in time to the event and because the suggestions of others and the circumstances of the trial have not yet intervened to create a fancied recognition in the witness's mind. *People v. Gould,* 54 Cal.2d 621, 626–27, 354 P.2d 865, 867, 7 Cal.Rptr. 273, 275, (1960); *Commonwealth v. Torres,* 367 Mass. 737, 739, 327 N.E.2d 871, 873 (1975). Because of the greater probative value of these prior identifications, testimony from the identifying witness and from third persons who observed the prior identifications should be admitted. All danger of hearsay is avoided, and the possible prejudicial impact of such testimony is mitigated by the opportunity for confrontation and cross-examination of the declarant. *Johnson v. State,*

237 Md. 283, 289–91, 206 A.2d 138, 142–43 (1965); *State v. Matlack*, 49 N.J. 491, 499, 231 A.2d 369, 374 (1967). The process of cross-examination abolishes the evils of hearsay because it forces the declarant to testify under oath about the truth of his statement before a trier of fact. *State v. Freber*, 366 So.2d 426, 427–28 (Fla.1978).

We have previously followed this reasoning in *State v. Nordstrom* 104 R.I. 480, 244 A.2d 842 (1968). The victim in *Nordstrom* was a seven-and-one-half-year-old girl who was indecently assaulted by the defendant. The child's father had witnessed her identification of the defendant at a line-up in the prison, and later two State Policemen viewed the victim's identification of the accused at the State Police headquarters. *Id.* at 481–85, 244 A.2d at 843–45. We found that the testimony of the father and that of the policemen were admissible because of the fairness and reliability of the identification process, and we stressed that any alleged danger of hearsay was not present because the child was available for questioning by the defendant. *Id.* at 488–89, 244 A.2d at 847.

Accordingly, we hold that the observations of the two police officers concerning Suave's identification are admissible both because there is no indication that the photographic array was at any time suggestive or improper and because Thomas Suave was available for confrontation and cross-examination by defendants.

The defendants' reliance on *State v. Ouimette*, 110 R.I. 747, 298 A.2d 124 (1972), and *In re Daniel*, R.I., 456 A.2d 258 (1983), as narrowing the *Nordstrom* holding is misplaced since these cases concern very different situations. In *Ouimette* the court allowed the state to introduce prior consistent statements to rehabilitate their witness who had been impeached by prior inconsistent statements. *State v. Ouimette*, 110 R.I. at 761–62, 298 A.2d at 133–34.

Accordingly, *In re Daniel* does not qualify *Nordstrom* because the witness in *Daniel* was not available for cross-examination.

There, the defendant was indicted for committing an indecent assault upon a three-year-old boy. The victim's mother and a police officer testified about the victim's out-of-court identification of the defendant, but the victim himself did not testify because he was just a young child. The court therefore held that the testimony of both the mother and the police officer was inadmissible hearsay. *In re Daniel*, R.I., 456 A.2d at 260–61.

In light of our decision in *Nordstrom*, we affirm the trial justice's denial of the motion to preclude the testimony of the two police officers.

(b)

The defendants contend that the mug shots should have been excluded insomuch as they were insufficiently sanitized and in view of the fact that the state demonstrated no specific need for their introduction.

In *State v. Lemon*, R.I., 456 A.2d 261 (1983), we adopted the guidelines for the introduction of mug shots as set out in *United States v. Fosher*, 568 F.2d 207 (1st Cir.1978). The three guidelines are: (1) the prosecution must have a demonstrable need to introduce the photographs; (2) the photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record; and (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs. *State v. Lemon*, R.I., 456 A.2d at 264–65, (citing *United States v. Fosher*, 568 F.2d at 214). Once these three factors are established, then the pictures may be introduced.

The defendants in the case at bar objected both generally and specifically at the end of their motion to exclude the mug shots. They claimed that the state failed to prove a demonstrable need and that the photographs could never be sufficiently sanitized. Right before the state gave its opening statement, and before the jury was present, defendants again objected to the

introduction of the photographs even though the state had sanitized them according to the trial justice's order, but they did not specifically object to the state's lack of demonstrable need. It is a well-established principle in this jurisdiction that this court will consider only those matters that have been properly raised in the court below. *Fiske v. MacGregor, Division of Brunswick,* R.I., 464 A.2d 719, 726 (1983). A party who fails to assert his specific objections is deemed to have waived his rights on appeal. *Russell v. Kalian,* R.I., 414 A.2d 462, 465 (1980). We find, however, that defendants have not waived their rights on appeal regarding the first factor of the *Fosher* test, whether the state has proven a demonstrable need, since this ground of exclusion should have been obvious to the trial justice and the opposing counsel stating it. The record indicates that the trial justice wished to waste no more time on the issue of the admissibility of the mug shots but wanted to proceed with the trial. We shall therefore decide whether the trial justice was in error in admitting the mug shots, relying on factors 1 and 2, and if so, whether this error was prejudicial.

Undoctored mug shots from a police-department rogues' gallery could be indicative of past criminal behavior and could likely create in the minds of the jurors an inference of such behavior. The double-shot picture, with front and profile shots alongside each other, and evidence of chains holding police numbers could reasonably lead one to believe that the person in the photograph has had trouble with the police. *Barnes v. United States,* 365 F.2d 509, 510–11 (D.C.Cir.1966). Most courts have concluded, however, that it is permissible to introduce such photographs if incriminating indicia are concealed or removed. *United States v. Fosher,* 568 F.2d at 214. For example, in situations in which photographs have been sanitized by cutting the police markings and the trial justice has instructed the jury not to draw any inference against the defendant from the sanitized photographs, the photographs can be admitted. *Commonwealth v. Soule,* 6 Mass.App. 973, 974, 384 N.E.2d 235, 236 (1979); *see United States v. Johnson,* 495 F.2d 378, 383–84 (4th Cir.), *cert. denied,* 419 U.S. 860, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974); *People v. Smith,* 20 Ill.App.3d 756, 760, 314 N.E.2d 543, 546 (1974) (Where the legends on the photographs were marked out prior to their being given to the jury, the court held that the photographs could be admitted).

■ Upon the trial justice's instruction, the state introduced only front shots and covered the nameplates with cardboard. We agree that this accommodation complies with the second prong of the *Fosher* test. This sanitization precludes any indication that these are mug shots or that these individuals have any criminal history.

■ We find, however, that the trial justice did abuse his discretion in ruling that the state proved a demonstrable need for the introduction of the photographs. The trial justice based his decision on the presence of a five-month gap between the alleged robbery itself and the first identification. We are of the opinion that there must be more of a justification for the introduction than the mere existence of a five-month delay.

In *Fosher,* the court stated that in most instances mug shots have been introduced to buttress or corroborate a witness's in-court identification either because of doubts created during cross-examination or because of a witness's hesitancy or inability to make a positive identification during trial. *United States v. Fosher,* 568 F.2d at 213. In *Gray v. State,* 268 Ind. 177, 374 N.E.2d 518 (1978), the defendant tried to attack the witness's identification of the defendant as one of the robbers. The court held it proper to rebut this attack by allowing into evidence the photos of the defendant that the witness identified at the police station on the night of robbery. *Id.* at 180, 374 N.E.2d at 519–20; *see also United States v. Harrington,* 490 F.2d 487 (2nd Cir.1973) (the court found a demon-

strable need to introduce the photographs where the government was surprised and probably seriously injured by their chief witness's failure to make an in-court identification).

Courts have also allowed the introduction of mug shots to illustrate how a defendant has physically changed since the arrest. In *Richardson v. State*, 270 Ind. 566, 388 N.E.2d 488 (1979), the sole eyewitness who had identified the defendant in the photographic line-up was unable to make a definite in-court identification. Thus, arrest photographs were held admissible for showing how the defendant had changed since the line-up.[1] *Id.* at 568–69, 388 N.E.2d at 490–91.

None of these situations are present in the case at bar. During the motion to exclude the photographs the state presented no evidence that defendants' physical appearance had changed so greatly that the photographs would be necessary to aid the witness, Suave, in his in-court identification. As demonstrated during trial, Suave was clearly capable of making a positive in-court identification without outside aid. Furthermore, his credibility was not so weakened during cross-examination as to warrant the introduction of the photographs. Accordingly, we find that the trial justice abused his discretion in ruling that the state had proved a demonstrable need.

██ Even though this admission was error, we nevertheless find that it was not reversible error in light of the other strong evidence regarding defendants' guilt. *See State v. Ashness*, R.I., 461 A.2d 659, 674 (1983). In *Letsinger v. United States*, 402 A.2d 411 (D.C.App.1979) the court held that the admission of mug shots was not reversible where the bottom portion containing potentially dangerous information had been cropped, and there was no testimony re-

garding their source from which a jury could have inferred that the defendant had a prior record. *Id.* at 414–15. Similarly, in *People v. Aponte*, 45 Ill.App.3d 1030, 4 Ill.Dec. 488, 360 N.E.2d 424 (1977), the admission of mug shots did not constitute reversible error when all possibly prejudicial matter was stricken prior to admission, the term "mugshot" was never applied, and witnesses had previously testified that the witness had identified the photographs shown to her by the police. *Id.* at 1039–40, 4 Ill.Dec. 494, 360 N.E.2d at 430–31.

In the case at bar, the witness Suave had made pretrial identifications that had been witnessed by two other persons. The photographs that were introduced were properly sanitized and were never referred to as mug shots. Finally, Suave was able to make a positive in-court identification. Because of this strong evidence regarding defendants' guilt, we hold that the introduction of the photographs was not reversible error.

(c)

The defendants contend that the trial justice erred in denying their motion to strike the in-court identification by the witness Suave because they were not aware until the cross-examination of Suave that there was a second viewing of the photographic array at the police station. This repetition of viewings, they argue, is relevant to an assessment of whether the totality of the circumstances resulted in an unnecessarily suggestive procedure.

The trial justice denied the pretrial motion to suppress the in-court identification by Suave because he determined that the first photographic viewing at Suave's home was not impermissibly suggestive, in violation of *Neil v. Biggers*, 409 U.S. 188, 196–201, 93 S.Ct. 375, 380–83, 34 L.Ed.2d 401, 409–12 (1972); *Simmons v. United States*, 390 U.S. 377, 384–85, 88 S.Ct. 967, 971, 19

---

**1.** In *Reyes v. State*, 579 S.W.2d 927, 928 (Tex. Crim.App.1979), the court allowed photographs taken on the date of arrest to be introduced to rebut the defendant's testimony that he was beaten up. In a manslaughter case, a court ruled that mug shots taken eight days after the

crime were admissible to show that the defendant had grown a beard since the crime. *People v. Laguer*, 58 App.Div.2d 610, 610, 395 N.Y.S.2d 226, 228 (1977); *see also Collett v. State*, 167 Ind.App. 185, 338 N.E.2d 286 (1975).

L.Ed.2d 1247, 1253 (1968). He found that Suave had ample opportunity to view the face of each defendant and that Suave was very alert at that time because a gun was pressed to his head. Both police officers testified that when presented with the photographs, Suave immediately picked out the two defendants without hesitation. Because of these findings, the trial justice ruled that the in-court identification was based "solely" upon the witness's observation of these defendants at the time of the criminal event and was not the product of any suggestive out-of-court identification.

■ We hold that the repetitiveness of the viewings, one at Suave's home and one at the police headquarters, is not so unduly suggestive in and of itself as to lead to irreparable misidentification. As the trial justice indicated, Suave's in-court identification was definitely based on his clear recollection of defendants at the time of the criminal event and not on any photographic viewings, however many there may have been. This situation is similar to that in *State v. Panella*, 168 Conn. 532, 362 A.2d 953 (1975). In *Panella*, the witness was shown the same photographic array three times prior to trial. In holding that her in-court identification was independent and based on an actual ability to recognize the perpetrator, the court noted that the description she provided to the police was consistent in its details with the defendant's actual appearance and that the circumstances of her encounter with the robber raised a great likelihood of reliability. *Id.* at 538–39, 362 A.2d at 956–57. We accordingly determine that because of Suave's very high level of attention at the time of the crime and because of the consistency of his testimony, the trial justice was not in error in denying the motion to strike Suave's in-court identification. *See Ellis v. United States*, 395 A.2d 404, 410–11 (D.C.App.1978).

■ Furthermore, the record indicates that defendants' charge of an orchestrated cover-up is belied by the fact that there was an inconsistency in the testimony of the state's witnesses concerning when the photographic identification occurred. Before the grand jury, both Suave and Detective Sobeleski testified that this identification occurred at Suave's home. Later, at a specific violation hearing in Superior Court, Sobeleski repeated his previous account of the photo array at Suave's home, but Suave testified that this identification occurred at police headquarters. This inconsistent testimony took place in a proceeding in open court where both defendants were present and were represented by counsel. Defense counsel clearly had knowledge of the contradictions, and they possessed a transcript of this hearing because they made use of these purported contradictions at trial in an attempt to discredit Suave. We therefore hold that the defense had sufficient knowledge of the second viewing, and we affirm the trial justice's denial of the motion to strike the identification.

## II

### *Jury Instructions*

■ The defendants contend that the trial justice erred in his instructions to the jury by shifting the burden of proof from the state to defendants. The defendants claim that one sentence in the instruction could be interpreted by a reasonable juror as requiring him to find an abiding conviction as to defendants' innocence, instead of finding an abiding conviction as to their guilt. *Dunn v. Perrin*, 570 F.2d 21, 23–24 (1st Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978); *State v. Thorpe*, R.I., 429 A.2d 785, 790 (1981). An instruction, however, will be struck down only if it *mandates* a shifting of the burden of proof. *State v. Lambert*, R.I., 463 A.2d 1333, 1338 (1983); *State v. Deans*, 93 R.I. 266, 271, 174 A.2d 666, 668 (1961).

This court has consistently held that a jury charge must be reviewed in its entirety to determine its correctness. *State v. Cipriano*, R.I., 430 A.2d 1258, 1262 (1981). According to the United States Supreme Court, "whether a defendant has been ac-

corded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instructions." *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39, 45 (1979); *see State v. Baker*, R.I., 417 A.2d 906, 910 (1980).

In light of this standard, we find that this instruction was not erroneous. Looking at the instruction in its entirety, we hold that the trial justice carefully outlined and explained each portion of the charge and in no way mandated a shifting of the burden of proof. Initially, the court explained the presumption of innocence and defendants' right not to testify. The court then defined the state's burden of proof beyond a reasonable doubt.

"Reasonable doubt must be more than that [a speculative doubt]. Proof beyond a reasonable doubt exists when, after thoroughly and conscientiously examining and considering all the evidence in the case, your mind is left in such a condition that you feel an abiding conviction, or moral certainty of the state's claim that the defendant is guilty of the charge."

As defendants concede, there was no defect in this reasonable-doubt instruction. The trial justice carefully explained that the burden of proof was upon the state. Later in the charge, the trial justice informed the jurors how they must evaluate and weigh the credibility of the evidence. Finally the court described the concept of inferences and circumstantial evidence and then informed the jury of the need for unanimity in reaching a verdict:

"You should neither be stubborn nor should you bend to the whims or desires of any other person. In other words, if you have an abiding conviction one way or the other, you shouldn't sway from that conviction unless and until you are reasonably convinced that you were wrong."

■ Although this portion of the instruction does use "abiding conviction" language, nothing tells the jurors to shift the burden of proof. The trial justice's instruction does not require a juror to have an abiding conviction of innocence, in violation of *State v. Thorpe*, R.I., 429 A.2d 785 (1981), but gives a standard to be applied when a juror considers changing his or her vote. He instructs that a juror should not lightly abandon his or her convictions but should do so only after a careful reexamination that leads him or her to conclude that that conviction was wrong. Since no unconstitutional interpretation can be given to this charge, we find that these jury instructions were proper.

## III

### *Speedy-Trial Issue*

The defendants initially claim that the trial justice erred in denying their motion to dismiss the charge because of a lack of speedy trial as guaranteed by the Sixth Amendment of the United States Constitution and art. I, sec. 10, of the Rhode Island Constitution. Alternatively, defendants contend that dismissal was warranted under Rule 48(b) of the Superior Court Rules of Criminal Procedure because of unnecessary delay in bringing them to trial.

■ In judging whether there has been a violation of the constitutional right to a speedy trial, the court must consider the criteria as set out by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *see State v. Adams*, R.I., 481 A.2d 718 (1984). The four factors to be considered are these: (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the right by the accused, and (4) the prejudice to the defendant caused by the delay. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The court must balance all of the above factors and consider them as a whole before concluding that there has been a violation of the speedy-trial right. *Id.* at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118; *State v. Anthony*, R.I., 448 A.2d 744, 751–52 (1982).

In light of this standard, we find that the trial justice was correct in determining that defendants' right to a speedy trial has not been abridged. As both parties concede, the fifteen-month delay from the arraignment to the ultimate trial is sufficient to satisfy the first criterion and trigger a speedy-trial analysis. We also find that defendants satisfied the third criterion with their repeated assertion of their right to a speedy trial. As the trial justice correctly noticed, however, defendants demanded a speedy trial at the same time that they caused delays. The record indicates that the delays were largely attributable to defendants' inability to retain and cooperate with counsel. Furthermore, the record does not reveal that defendants suffered any cognizable prejudice from the delay. The defendants' assertion that they have suffered emotional trauma from awaiting trial for over a year is an insufficient basis for a claim of denial of a speedy trial. *State v. Adams*, R.I., 481 A.2d at 726–27. Relying on these findings, we affirm the trial justice's finding that defendants' constitutional right to a speedy trial has not been abridged.

A motion to dismiss under Rule 48(b) is within the sound discretion of the trial justice, and this court will not disturb that decision unless there is a clear showing of abuse. *State v. Dionne*, R.I., 442 A.2d 876, 881 (1982). A defendant seeking dismissal pursuant to Rule 48(b) bears the initial burden of establishing that none of the delay was attributable to him. *State v. Macaskill*, R.I., 475 A.2d 1024, 1028 (1984). Because defendants failed to carry the initial burden of negating responsibility for the delay, we find that the trial justice acted within his discretion in ruling the 48(b)-dismissal inappropriate. *See State v. Baccaire*, R.I., 470 A.2d 1147, 1150 (1984).

### IV

### *Witness's Fear*

The trial justice did not abuse his discretion in allowing the witness to testify to his unique reasons behind his fear at the time of the robbery. The crime of robbery in Rhode Island is defined as "the 'felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear.'" *State v. Reposa*, 99 R.I. 147, 149, 206 A.2d 213, 215 (1965).

Fear is relevant to an element of the crime charged; thus the state must be permitted to introduce evidence regarding this element. At trial, the witness Suave testified that he was in fear of his life when defendant had a gun to his head during the robbery. When asked why, he responded that he had been shot before in Vietnam and had had to spend a year in the hospital. This testimony is not extraneous, irrelevant material whose only purpose is to inflame the passions of the jury but is testimony directly relating to an element of the crime. Accordingly, we find that the trial justice properly permitted the state to produce evidence of the victim's fear.

### V

### *Lack of Counsel*

Defendant Long argues that the indictment should be dismissed on the ground that he had been denied his right to counsel as guaranteed by the Sixth Amendment to the United States Constitution and art. I, sec. 10, of the Rhode Island Constitution and Rule 44 of the Superior Court Rules of Criminal Procedure.[2] *See State v. Cabral*, 122 R.I. 623, 628, 410 A.2d 438, 442 (1980); *State v. Delahunt*, 121 R.I. 565, 571–72, 401 A.2d 1261, 1265 (1979). Defendant Long, however, does not claim that he was forced to proceed to trial without adequate counsel, nor does he claim that he was without counsel during any critical stage of the prosecution. Instead he focuses upon a five-and-one-half-month period between May and September of 1982 during which no attorney was on record as appearing on his behalf.

**2.** Defendant Nichols never filed a motion to dismiss for lack of counsel.

The record reveals that this lack of counsel is attributable to defendant Long himself and not to the state. The two attorneys who represented defendant Long before this five-and-one-half-month gap withdrew because they found Long to be uncooperative. When asked by the trial justice if he wanted an attorney appointed for him, defendant suggested that his family was attempting to find private counsel to represent him. Five months later, defendant filed a new motion for appointed counsel and received one within a week. *See State v. Austin*, R.I., 462 A.2d 359, 366 (1983).

Because defendant is responsible for this gap and because defendant can point to nothing prejudicial that occurred during this time, we hold that the trial justice correctly denied defendant Long's motion to dismiss for lack of counsel.

## VI

### *Robbery of the Store*

Defendants Nichols and Long were indicted for robbing Thomas Suave, an employee at G & H Station. Suave testified that defendants stole money belonging to him personally as well as funds from the station. The defendants argued that because the indictment referred only to Suave as the victim, testimony regarding money stolen from the store was improper.

However, we have held that any circumstance that is incidental to or connected with the offense "may be received when it is interwoven with the offense for which the defendant is being tried, or directly supports a finding of guilty knowledge in the perpetration of that offense." *State v. Ryan*, 113 R.I. 343, 349, 321 A.2d 92, 95 (1974).

We find that the robbery of store property was interwoven with the offense for which the defendants were being tried and is therefore admissible. We accordingly affirm the trial justice's denial of the motion to preclude references to funds stolen from the service station.

The defendants' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.