**Supreme Court**

No. 2011-311-C.A.

(P1/09-3676AG)

State                              :

v.                              :

Donald Young.                              :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Donald Young. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**   The defendant, Donald Young, appeals to this Court from a judgment of conviction on seven counts; the murder of Kasean Benton in violation of G.L. 1956 § 11-23-1 (count 1), conspiracy to commit murder in violation of G.L. 1956 § 11-1-6 (count 2), discharging a firearm during the commission of a violent crime resulting in the death of another in violation of G.L. 1956 § 11-47-3.2 (count 3), assault with a dangerous weapon on Dukuly Torell Soko in violation of G.L. 1956 § 11-5-2 (count 4), conspiring with others to assault Soko with intent to murder in violation of § 11-1-6 (count 5), discharging a firearm while committing a crime of violence in violation of § 11-47-3.2 (count 6), and possession of an unlicensed firearm in violation of § 11-47-8(a) (count 7).   The trial justice sentenced the defendant to consecutive life sentences plus twenty non-parolable years to run consecutively to the life sentences.

On appeal, defendant advances two arguments why this Court should vacate the convictions.   First, he argues that the trial justice erred when he admitted evidence of gang

affiliation, evidence relating to the earlier stabbing of Soko, allegedly by defendant, and testimony about an unsolved homicide. Second, he contends that the trial justice should have dismissed the offense of discharging a firearm while in the commission of a crime of violence because it merged with the offense of assault with a dangerous weapon with intent to murder.

After a careful review of defendant's arguments and a thorough review of the record, we affirm the judgments of conviction.

# I

## Facts and Travel

During the waning daylight hours on July 12, 2009, defendant and two associates were walking on Trask Street in Providence. The group approached a white Buick that was parked next to the driveway in front of 30 Trask Street. Inside the vehicle, the owner and operator, Kasean Benton, a Providence resident, sat next to his friend, Dukuly Torell Soko. Soko was a former resident of Providence who was visiting from New York and staying with family members at 30 Trask Street. When defendant was approximately thirty feet away from the Buick, he raised his arms and fired several rounds from a black semiautomatic weapon into the vehicle's windshield; after which, witnesses testified to hearing, "Fu** you, ni**er," "motherf******," "bit**," "ni**er." Immediately, Benton and Soko fled the vehicle; Benton ran toward the backyard at 30 Trask Street while Soko ran towards Cahill Street. They did not, however, escape unscathed. In the aftermath of the shooting rampage, one man was wounded and another was dead.

Soko reached Cahill Street and laid low until he heard emergency sirens approaching the area. He then rushed back to 30 Trask Street, his grandfather's house, in an effort to locate Benton. Soko first encountered a Providence Police Officer, but he refused to answer any

questions or cooperate with the officer until he had located Benton. Soko's aunt, Tina Soko Taylor, who had heard the gunshots while inside the house and had conducted an unsuccessful neighborhood search for Soko, saw him upon her return. She asked him what had happened, and Soko responded, "Auntie, Auntie, it's Donald. They're shooting at us." A neighbor, Robert Sullivan, testified that he heard a "pumped up" Soko tell his aunt, "I don't need this right now * * * . This is the second time they tried to kill me." When asked to whom the word "they" referred, Sullivan testified that Soko said, "It was Donald. It was Donald."

Soon after this exchange, police noticed that Soko had suffered an apparent gunshot wound. Soko was placed in a police cruiser, and then an ambulance, before being transported to Rhode Island Hospital. At the hospital, Soko named defendant as the shooter and then identified him from a six-person photographic lineup.[1] It was not until after he was discharged from the hospital that Soko learned Benton had been killed.

Shortly after the police arrived on the scene, responding officers found Benton's white sneaker, still tied and with blood on it, at the base of a stockade fence at the rear end of the driveway at 30 Trask Street. After the owner of the house opened the locked gate, police found Benton's body between the fence and a backyard swimming pool. The state's medical examiner testified that Benton had died due to a gunshot wound that entered the left side of his back, passed between his ninth and tenth ribs, struck his left lung and his heart, and then exited his body on the left side of his chest between his second and third ribs.

---

[1] Soko refused to sign his name on defendant's photograph from the lineup, but, at the request of the police, wrote the word "shooter" on the photograph as an identifying mark that he had selected defendant.

The state developed at trial that the shooting on July 12 was the final act of an ongoing feud between two groups of young men, YNIC[2] and Comstock.[3] Even though Benton and Soko had been friends with defendant when they were growing up, their respective relationships with him had soured. Soko testified that he had met defendant in Head Start and had played basketball with him twice when he was sixteen. However, in 2007, Soko had a physical altercation with defendant at a party, after which Soko was hospitalized for stab wounds. The next day, after he was released from the hospital, Soko had a second physical altercation with defendant on the street after Soko accused defendant of stabbing him at the party, resulting in Soko punching defendant. Further, even before the incident at the party, Soko and defendant had exchanged "angry" or "threatening" words at the Providence Place Mall.

Soko also testified that Benton and defendant had become enemies because Benton was a member of YNIC and defendant was a member of Comstock. Because Benton and defendant were members of their respective and rival gangs, their formerly friendly relationship came to an end. Soko also testified that in 2007, another member of Comstock, Darren Regans, had been murdered in a Providence nightclub. Although he never was charged with any crime arising from that homicide, Benton had been questioned in connection with Regans's death.

The defendant stood for trial before a jury in April 2011 for seven criminal offenses. The state's theory was that defendant murdered Benton in retaliation for the killing of Darren Regans in 2007 and that defendant tried to kill Soko because of his association with YNIC. The jury found defendant guilty on all counts. In June 2011, the trial justice sentenced defendant to a

---

[2] "YNIC" is an acronym for "Young Ni**ers in Charge."
[3] "Comstock" is a gang whose members come from Comstock Ave. in Providence.

lengthy period of incarceration. The total sentence imposed on the various counts of conviction amounted to consecutive life sentences plus forty years, with at least sixty years to serve.[4]

## II

## Discussion

The defendant predicates his appeal on two grounds. First, defendant asserts that the trial justice erred in allowing testimony about gang affiliation, physical altercations between defendant and Soko, and the unsolved murder of Darren Regans. Second, defendant argues that the trial justice erred when he denied his motion for judgment of acquittal, pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure, because defendant claimed he was twice placed in jeopardy in that counts 4 and 6 should have merged.

## A

## Motions in Limine

Before the trial began, defendant filed several motions in limine in an effort to exclude certain testimony under Rules 403 and 404(b) of the Rhode Island Rules of Evidence.[5] First, defendant moved to exclude any testimony relating to either gang affiliation or retaliation between YNIC and Comstock because such testimony was without probative value and was unduly prejudicial. In response, the trial justice ruled that he would admit "some" discussion of gang affiliation and the contention that YNIC and Comstock were at odds for the purposes of

---

[4] The trial justice sentenced defendant to life sentences on counts 1 and 3, to be served consecutively, ten years for count 2, to be served concurrent with count 1; twenty years for count 4, to be served consecutive to count 3; ten years for count 5, to be served concurrently with count 4; twenty years for count 6, to be served without parole and consecutive to count 4; and ten years for count 7, to be served concurrently with count 1.

[5] Of note, defendant did not refer specifically to either Rules 403 or 404(b) of the Rhode Island Rules of Evidence in his motions in limine, but he did state that the testimony is "unduly prejudicial and without probative value." It appears from the record that the trial justice considered the motions in limine to have been filed seeking to exclude the testimony pursuant to those rules.

voir dire during jury selection. He also ruled that he would delay ruling on the motion and would hear further arguments from counsel after jury selection.

Next, defendant moved for an order restricting Soko from testifying about the stabbing he suffered at the 2007 party, and his subsequent physical altercation with defendant, because Soko could not swear that defendant stabbed him. Soko could only testify that, based on defendant's presence when the stabbing took place, he assumed defendant had stabbed him. The trial justice delayed ruling on that motion until trial, when the parties could make their respective arguments as to the relevance of the testimony. The trial justice also deferred ruling on a final motion in limine, which was defendant's motion to exclude any testimony about the unsolved homicide of Darren Regans.[6]

**1**

**Standard of Review**

We review a trial justice's admission of evidence for an abuse of discretion. See State v. Evans, 742 A.2d 715, 719 (R.I. 1999) ("Decisions about the admission or exclusion of evidence based on relevance are left within the trial justice's discretion."). "The trial justice's decision will be upheld unless the trial justice abused his or her discretion and the admission of irrelevant evidence was prejudicial to a defendant's rights." Id. (citing State v. Gabriau, 696 A.2d 290, 294 (R.I. 1997)). "The trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." Id.

---

[6] The defendant also filed a motion in limine to exclude testimony about a verbal altercation between Soko and defendant, which the trial justice delayed ruling on. This motion is not before us because defendant does not raise it on appeal.

**2**

**Analysis**

Before we consider the merits of defendant's appeal, we must first address whether the issues are properly before us. We consistently have held that we will review only those issues that have been properly preserved for appellate review. State v. Harris, 871 A.2d 341, 345 (R.I. 2005) (citing State v. Saluter, 715 A.2d 1250, 1258 (R.I. 1998)); see also State v. Long, 488 A.2d 427, 432 (R.I. 1985).

Rule 103(a)(1) of the Rhode Island Rules of Evidence provides that an erroneous evidentiary ruling "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * a timely objection * * * appears [on] record, stating the specific ground of objection, if the specific ground was not apparent from the context." We have said that, "[b]y failing to record specific objections, a party is deemed to have waived his or her rights on appeal." State v. Mastracchio, 612 A.2d 698, 704 (R.I. 1992) (citing Long, 488 A.2d at 432). "A party who fails to assert his specific objections is deemed to have waived his rights on appeal." Long, 488 A.2d at 432 (citing Russell v. Kalian, 414 A.2d 462, 465 (R.I. 1980)).

The defendant first argues that the trial justice erred in admitting evidence of gang affiliation. However, the record indicates that defendant failed to object to the introduction of this testimony. It is a basic rule of our appellate practice that it is inappropriate for us to consider an issue on appeal when no objection was interposed at trial. See State v. Bettencourt, 723 A.2d 1101, 1107 (R.I. 1999) (citing State v. Toole, 640 A.2d 965, 973 (R.I. 1994)). In addition and of equal significance, defendant appeared to have actively withdrawn the motion in limine because he intended to use gang affiliation testimony during cross-examination of the state's witnesses.

At the conclusion of the State's case, the trial justice had the following colloquy with counsel for defendant:

> "THE COURT: Okay. There was some discussion prior to trial on your motion, defendant's motion, regarding discussion of gangs. It was left open that eventually we will get to it before the [jury] was sworn. The record is barren of any discussion about it, and that is because, informally, we've had discussions, although it's never been recorded, that the trial strategy and other tactical reasons, the defense has decided early on, that it would not pursue such a motion, because, number 1) it was going to be, in large part, part of cross-examination. And, as I pointed out to counsel early on, the authorities are replete with cases that admit such evidence, particularly when it comes to motive. If I've misconstrued or misinterpreted your thought process, tell me or otherwise state what you'd like on the record in that regard.
>
> "[DEFENSE COUNSEL]: No, Your Honor. You have not misconstrued it. I did speak with Mr. Young about those issues, specifically gangs and YNIC and Comstock, and I explained to him my thought processes about using it in cross-examination of at least Torell Soko, and he agreed to let me do so * * * ."

Thus, defendant appears to have made a conscious decision to employ this line of questioning and he cannot now object to its admission on his appeal. The trial justice ruled that "some evidence" of gang affiliation could come in during jury selection. The above colloquy aside, to preserve this issue for appeal, defendant had the obligation to object during the trial to introduction of this testimony. It is clear to us that defendant has waived the issue on appeal because the absence of any objection and the use of the testimony about gang affiliation on defense precludes our consideration.[7]

---

[7] Despite disposing of this issue for defendant's failure to preserve, it does not appear that the trial justice ran afoul of Rule 403 when he admitted this evidence. Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice * * * ." It "is well settled that we review a trial justice's decision admitting or excluding evidence under an abuse of discretion standard." State v. Brown, 42 A.3d 1239, 1242 (R.I. 2012) (quoting State v. Marmolejos, 990 A.2d 848, 851 (R.I. 2010)). We will reverse a trial

The defendant next argues that the trial justice erred when he allowed testimony about the murder of Darren Regans, a member of Comstock, in 2007. The defendant maintains that admitting testimony of Regans's stabbing death at a Providence nightclub may have led the jury to believe that Comstock murdered Benton because Benton had been questioned about the Regans killing. However, again we do not reach the merits of this argument because defendant did not preserve this issue for appeal. Indeed, at several points throughout the trial, defendant failed to object when the state questioned a witness about the murder of Darren Regans. As we have stated on occasions too numerous to cite, we will not consider issues on appeal that were not objected to at trial. Moreover, during the cross-examination of Soko, defendant himself asked questions relating to the murder of Darren Regans. At one point during the state's direct examination of Soko, defendant objected to a question relating to Darren Regans's affiliation with Comstock, but he failed to offer any basis for the objection. As we held in Mastracchio, 612 A.2d at 704, a defendant must raise a specific objection or he has waived the right to argue

---

justice's ruling on the admissibility of evidence only where "it constitutes a clear abuse of discretion." Id.; see also State v. Covington, 69 A.3d 855, 862 (R.I. 2013); State v. Smith, 39 A.3d 669, 673 (R.I. 2012). A trial justice is only required to exclude testimony when "evidence is marginally relevant and enormously prejudicial." Covington, 69 A.3d at 863 (quoting Smith, 39 A.3d at 675). Here, both defendant and Benton were acknowledged members of Comstock and YNIC, respectively. The introduction of some evidence of the ongoing conflicts between the two groups was not enormously prejudicial to defendant.

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." We have previously held "that Rule 404(b) is designed to prohibit the introduction of evidence that is relevant only to show that the defendant is a bad person and, therefore, likely to have committed the offense with which he is charged." State v. Graham, 941 A.2d 848, 861 (R.I. 2008). "[S]uch evidence is admissible if it tends to establish, 'guilty knowledge, intent, motive, design, plan, scheme, system, or the like.'" Id. (quoting State v. Lemon, 497 A.2d 713, 720 (R.I. 1985)). The prior altercations defendant had with Benton and Soko were probative of a feud between YNIC and Comstock that could have served as a source of defendant's motive to retaliate or seek retribution.

the issue on appeal. Here, counsel for defendant simply stated, "objection," without providing any basis for the objection. Thus, we consider the argument waived.[8]

Finally, defendant argues that the trial justice erred when he allowed testimony about the stabbing of Soko and the subsequent physical altercation between Soko and defendant the following day. Young emphasizes that Soko admitted he did not know who stabbed him, only that defendant was present along with several other members of Comstock. Therefore, he argues that introduction of this testimony only served to demonstrate defendant's violent propensity. But, as with the previous two arguments, this issue also fails because it was not preserved for appeal. At no point did defendant object to questions by the state designed to elicit testimony from Soko relating to his prior confrontations with defendant. It is true that defendant did file a motion in limine on which the trial justice deferred ruling, but defendant failed to raise the issue again even when prompted by the trial justice at the conclusion of the state's presentation. As a result, we hold that this argument has also been waived. See State v. Burke, 529 A.2d 621, 627 (R.I. 1987).[9]

---

[8] We would note that we see no error in the trial justice's ruling in any event. Rule 404(b) seeks to prevent bad act evidence of a defendant which would tend to demonstrate that there is "a probability that he has committed the crime on trial because he is a man of criminal character." State v. Jalette, 119 R.I. 614, 624, 382 A.2d 526, 532 (1978) (quoting McCormick, Evidence § 190 at 447 (2d ed. 1972)). Here, however, the murder of Darren Regans is purported to have been committed by a victim, not by defendant. Furthermore, the testimony related to the Regans murder was highly probative of the state's theory of retaliation because it tended to demonstrate defendant's motivation to commit the offenses with which he was charged.

[9] Even if we were to reach the merits, we are loath to see how we would disturb the trial justice's decision to admit this testimony because of its evidentiary relevance as to motive. The record indicates that some months before the alleged stabbing, Soko and Young had a verbal confrontation at Providence Place Mall. Soon after, the two also had an argument at the party where Soko was stabbed. The day after the stabbing incident, Soko and Young had a physical altercation on Trask Street after Soko accused Young of stabbing him, and Soko punched defendant. This testimony is certainly probative of defendant's motive for the July 12, 2009 incident and is not unduly prejudicial.

**B**

**Double Jeopardy**

The defendant also contends that the trial justice erred in denying his Rule 29 motion for judgment of acquittal. At trial, defendant asserted a double-jeopardy claim, arguing that pursuant to Blockburger v. United States, 284 U.S. 299 (1932), count 6, discharging a firearm in commission of a crime of violence in violation of § 11-47-3.2, merged with count 4, assault with intent to murder in violation of § 11-5-2. The trial justice conducted a Blockburger analysis and ultimately denied the motion, ruling that each offense required separate elements, notably that assault with a dangerous weapon does not require the use of a firearm. Although we agree with the trial justice's denial of the Rule 29 motion, we arrive at our conclusion after treading a different path.

**1**

**Standard of Review**

An alleged violation of the Double Jeopardy Clause is, "'a mixed question of law and fact of constitutional dimension[,]' and therefore our review of such a claim is de novo." State v. Marsich, 10 A.3d 435, 441 (R.I. 2010) (quoting State v. Stone, 924 A.2d 773, 778 (R.I. 2007)). However, within that review, "we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference * * * ." Rice v. State, 38 A.3d 9, 16 (R.I. 2012) (quoting State v. Laurence, 18 A.3d 512, 521 (R.I. 2011)).

**2**

**Discussion**

The Fifth Amendment to the United States Constitution "protects criminal defendants from being 'twice put in jeopardy' for the same offense." State v. Oliver, 68 A.3d 549, 557 (R.I.

- 11 -

2013) (quoting State v. Bolarinho, 850 A.2d 907, 909 (R.I. 2004)). This Court has long established that "[b]ecause of the similar wording and purpose underlying the state and federal constitutional provisions on this subject, Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution." State v. Rodriguez, 822 A.2d 894, 906 (R.I. 2003) (citing State v. Grullon, 117 R.I. 682, 371 A.2d 265 (1977)).[10] The Double Jeopardy Clause protects an accused from being "twice put in jeopardy," which the United States Supreme Court has viewed as protecting a criminal defendant from multiple trials for the same offense. Marsich, 10 A.3d at 442 (citing Missouri v. Hunter, 459 U.S. 359, 365 (1983)). Double Jeopardy also "prohibits a sentencing court from imposing greater punishment than the legislature has proscribed." Id. (citing Hunter, 459 U.S. at 366).

There are two methods to determine whether a defendant has been twice placed in jeopardy. First, we conduct our analysis under the "same evidence" test established in Blockburger, 284 U.S. at 304, and adopted by this Court in State v. Davis, 120 R.I. 82, 86, 384 A.2d 1061, 1064 (1978). Under this analysis, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Davis, 120 R.I. at 86, 384 A.2d at 1064 (quoting Blockburger, 284 U.S. at 304).

The second method is a test established in Hunter that this Court adopted in Rodriguez, 822 A.2d at 907 n.15. See also Hunter, 459 U.S. at 367-68. The Court "examine[s] the

---

[10] The Rhode Island Constitution provides in pertinent part that "[n]o person shall be subject for the same offense to be twice put in jeopardy." R.I. Const. art. 1, sec. 7. The United States Constitution provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * * ." U.S. Const. Amend. V. The defendant did not mention either the United States or Rhode Island Constitutions in his argument, but does invoke Blockburger v. United States, 284 U.S. 299 (1932) and State v. Davis, 120 R.I. 82, 384 A.2d 1061 (1978), on appeal.

challenged statutes to ascertain whether the Legislature intended to authorize cumulative sentencing" for the offenses contained in the indictment. Rodriguez, 822 A.2d at 907 n.15. If the underlying legislative intent of the enactment is clear, there is no double-jeopardy violation for consecutive sentences after conviction under both statutes, "regardless of whether both statutes proscribe the same conduct under Blockburger." Id. (citing Hunter, 459 U.S. at 367–68).

Although the defendant argues that the trial justice erred in his Blockburger analysis in ruling that there was no double jeopardy, we need not reach Blockburger because the intent of the Legislature with respect to these statutes is crystal clear. We have not had the occasion to address cumulative sentencing with respect to the relationship between § 11-47-3.2, use of a firearm in a violent crime, and § 11-5-2, assault with intent to murder; however, we have examined recently the interplay between § 11-47-3.2 and § 11-39-1, robbery, in Marsich, 10 A.3d at 442-43. In Marsich, we conducted a Hunter analysis because we determined that "the General Assembly has expressed its clear directive that consecutive sentences be imposed for certain violent crimes committed by use of a firearm, and therefore it is unnecessary to undertake both analyses." Id. Relying upon our decision in Rodriguez, we noted in Marsich, "'the General Assembly clearly has expressed its intent that a guilty defendant should receive consecutive sentences' for using a firearm during the commission of a crime of violence." Id. at 443 (quoting Rodriguez, 822 A.2d at 908).[11] Likewise, in State v. Monteiro, 924 A.2d 784, 793 (R.I. 2007), which involved a double-jeopardy claim for consecutive life sentences for murder and for using a firearm during the commission of a crime of violence, we reaffirmed our decisions in State v.

---

[11] According to G.L. 1956 § 11-47-2(2), "crime of violence" means "assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony; upon any conviction of an offense punishable as a felony offense under [G.L. 1956] § 12-29-5."

<u>Feliciano</u>, 901 A.2d 631, 648 (R.I. 2006) and <u>Rodriguez</u>, 822 A.2d at 904–08, where we concluded under <u>Hunter</u> that convictions for both crimes do not merge for double-jeopardy purposes. We see no reason to depart from that reasoning in this case.

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of conviction in this case. The record shall be returned to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   State v. Donald Young.

**CASE NO:**   No. 2011-311-C.A.
(P1/09-3676AG)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   November 7, 2013

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

For State:   Aaron L. Weisman
Department of Attorney General

For Defendant:  Christopher S. Gontarz, Esq.