**STATE**

v.

**Ronald LEMON.**

**No. 81–481–C.A.**

Supreme Court of Rhode Island.

Feb. 4, 1983.

Dennis J. Roberts, II, Atty. Gen., Joel Chase, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Attorney, Providence, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, Ronald Lemon (Lemon), stands convicted by a Superior Court jury of having committed first-degree sexual assault (rape) upon a sixteen-year-old girl to whom we shall hereinafter refer as Louise. His appeal is directed to three evidentiary rulings made by the trial justice. We will give a brief résumé of the evidence before turning to the alleged errors.

Louise told the jury that she spent the better part of the afternoon of June 19, 1979, at a laundromat located in the Elmwood section of Providence. At first she was occupied for an hour or so tending to her family's laundry. She spent most of the remaining portion of the afternoon at the laundromat talking to her girlfriend Debbie, who had come to the laundromat with a bundle of wash and with her boyfriend Lemon. After Debbie's laundry was completely washed and dried, Louise, Debbie, and Lemon got into a car owned and driven by Tony, a friend of Lemon's, and traveled to South Providence's Roger Williams housing development, where the three went up to a second-floor apartment.

Louise stated that she went to the apartment because Debbie had suggested that once the laundry had been delivered to the apartment, they would go elsewhere. Once they arrived at the apartment, Louise sat in a chair in the living room. Later Debbie came in from the kitchen and told Louise that she had better go out to the kitchen and have a chat with Lemon. After a brief conversation during which the two sat at the kitchen table, Lemon allegedly dragged Louise into an adjoining bedroom, forced her to take pills, struck her across the legs with a metal coat hanger, and then raped her.

Lemon's sister was the sole defense witness (she and other members of the Lemon family lived in the apartment). She had returned home from her job as a supervisor at a nearby playground at 1:45 p.m. At that time Debbie and Lemon were there. Debbie then left the apartment and returned a half-hour later with Louise. Sometime later the sister heard some yelling from the bedroom area; and when she went to see what was going on, she saw Louise and her brother, both fully clothed, lying on the bed. The sister told the jury that she heard Louise tell her brother that if he "didn't let her work for him, she was going to press rape charges on him." The

sister explained to the jury that at this juncture she told Louise to leave the premises.

There are three facets to Lemon's appeal, all of which relate to rulings made by the trial justice. The rulings relate to (1) the provisions of Rule 26.3 of the Superior Court Rules of Criminal Procedure, which, together with G.L. 1956 (1981 Reenactment) § 11–37–13, restrict the admissibility of evidence of the past sexual experiences of a complainant in a sexual-assault case with persons other than the alleged assailant, (2) the admission into evidence of "mug shots" taken of Lemon, and (3) the admission of a "spontaneous utterance" that permitted Louise's sister to tell what happened when Louise returned home from the apartment.

After Louise had complained to the police, she was taken to Women and Infants Hospital, where she was examined by a physician who at trial testified as an expert in the areas of gynecology and obstetrics. The examination occurred at 9:30 p.m. The physician testified that he found no significant marks during an external examination of Louise's face, neck, body, and extremities. A vaginal examination disclosed no evidence of spermatoza, live or dead. The physician also stated that he found no scratches or bruises or any objective indicia of an application of force anywhere upon Louise's body. He found no objective signs that would support her complaint that she had been choked. In light of her claim of forced feeding of pills, he examined Louise's eyes but found nothing abnormal. The expert also reported that Louise's hymen was open. Notes taken by the physician at the time of the examination indicate that Louise had told him that some eight days earlier she had had intercourse with someone other than Lemon.

A state toxicologist told the jury that a laboratory examination of a vaginal swab taken by the gynecologist indicated the presence of seminal fluid. Louise had told the police that Lemon had not ejaculated during the act of intercourse that she said had occurred.

At the conclusion of Louise's cross-examination, the trial justice, after announcing that there would be a recess, excused the jury and cleared the courtroom of all spectators. Once the jury had left and the courtroom had been cleared, Lemon's counsel told the trial justice that, acting pursuant to the provisions of Rule 26.3, he was about to ask questions of Louise about "her prior sexual conduct, specifically, it was my intention to pose the question, when was the last time before the incident with Ronald Lemon that she had sexual intercourse. I believe [Louise] would answer that she had prior sexual intercourse a few days prior to June 19, that she might in fact say eight days, because that's the time period in the medical report." Counsel based the relevance of this line of inquiry upon the fact that the state had announced its intention to introduce evidence from the state toxicologist which would indicate that the vaginal swab taken the night of the alleged rape showed live sperm, an indication that Louise had had sexual intercourse with some male. After stressing the confused state of the record, particularly the point where Louise told the police that Lemon did not ejaculate, counsel described the issue as, "[W]as there another source for this material[?]" He also made it clear that he was "not attempting to explore how long she's been sexually active, or how many partners or even who with." The only question to be posed was, "[W]hen was the last time, prior to the incident with Ronald Lemon, that she had sexual intercourse?"

In response to the remarks made by Lemon's counsel, a spirited colloquy ensued between the trial justice, the state's attorney, and Lemon's counsel. Throughout this discussion the trial justice constantly referred to the reporter's notes that accompany Rule 26.3 and finally rejected the offer of proof because Lemon "does not possess independent proof of prior sexual activities." The term "independent," he said, means "independent of anything associated with the case."

The trial justice's reliance on a lack of "independent proof" stems from his reading that portion of the reporter's notes where, in explaining the purpose of the rule, the reporter points out that the rule "is designed to guard against the tactic of inquiring about a complainant's sexual conduct with others when the inquiry lacks independent support and is being pursued to embarrass and hopefully deter the victim from assisting with the prosecution."

The rule requires a defendant to make an offer of proof demonstrating the basis and relevancy of the proposed inquiry he intends to pursue. If the trial justice finds from the offer that the evidence is germane to the issues in the case and that there is sufficient basis to warrant receiving such evidence, defense counsel will be allowed to proceed with the inquiry. However, the reporter also states that if the trial justice finds that the defendant is seeking merely to cross-examine the complainant about her past sexual encounters with others and "he does not possess independent proof of such activities" or the activities intended to be discussed are not relevant to the offense charged, the offer of proof shall be rejected.

The Superior Court adopted Rule 26.3 during the spring of 1975. The statute whose language tracks the rule's provisions was enacted two years later by the General Assembly at its January 1979 session.[1] Thus, Rhode Island became one of forty-five states that, along with the federal government, have enacted rape-victim shield laws that restrict or exclude certain types of evidence. Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544 (1980). The restrictions placed on the admissibility of certain evidence by the rape-shield laws will, it was hoped, encourage rape victims to come forward and report the crimes and testify in court protected from unnecessary indignities and needless probing into their respective sexual histories. State v. Patnaude, 140 Vt. 361, 373, 438 A.2d 402, 407 (1981).

The trial justice's requirement of "independent proof" was understandable in the light of the language employed by the reporter. However, as was noted in *State v. Eckhart,* 117 R.I. 431, 437, 367 A.2d 1073, 1076 (1977), even though the Sixth Amendment guarantees the right of confrontation and the right to fish a bit during cross-examination, the one doing the fishing must satisfy the trial justice that there is a reasonable possibility that there are fish in the pond before the license need be issued. The same may be said about Rule 26.3. In this case the prior statement made by the alleged victim to the examining physician fulfilled the requirement of independent support.

Lemon's counsel, before inquiring into evidence of Louise's prior sexual contacts, had to satisfy the threshold requirement of relevancy. The source of such evidence may arise from the trial itself, or it may emanate from a source totally unrelated to the ongoing proceeding. Here, the offer of proof presented by Lemon's trial counsel was relevant and to the point. The source of the "male ejaculate" observed by the toxicologist might have been revealed had counsel been permitted to pursue his line of inquiry. The impact of such a revelation on the outcome of the case might well have been significant. The primary purpose of our rules of evidence is to ensure that the trier of fact will have before it all relevant, reliable, and probative evidence on the issues in dispute. *State v. Tribble,* R.I., 428 A.2d 1079, 1085 (1981). Since we cannot say that the excluded evidence would not have influenced the jury to reach a contrary verdict, a new trial is necessary.

Because a new trial is required, we shall comment briefly on one of the two remaining issues. Lemon's appellate counsel has argued with vigor that the employment of the "mug shots" was totally unnecessary because there was no dispute concerning who were the alleged assailant and the alleged victim in the case at bar. As a

---

1. The rule and the statute are set out in the appendix attached to this opinion.

general proposition, we recognize that "mug shots" are generally indicative of past criminal conduct and likely to create in the minds of the jurors an inference of such behavior. However, we subscribe to the sentiments expressed by the First Circuit Court of Appeals in *United States v. Fosher*, 568 F.2d 207, 214 (1st Cir.1978), where the court cited the following three standards that must be satisfied before such photographs can be admitted into evidence: (1) the prosecution must have a demonstrable need to introduce the photographs; (2) the photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record; and (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

One of the witnesses for the state was Louise's sister. She told the jury that when Louise arrived home on June 19, 1979, at approximately 6:30 p.m., she asked Louise if there was something wrong. The sister at this time was in the process of washing and drying the supper dishes. Fifteen minutes later Louise left the kitchen area and ran into the bedroom, crying. The sister testified that she entered the bedroom to see what was the matter, and after a ten-minute effort she succeeded in bringing Louise to a fair degree of composure. When the sister asked Louise why she was crying, Louise said that someone had raped her.

■ The admissibility of statements purporting to be spontaneous utterances is a matter vested in the sound discretion of the trial justice. *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978). Since it involves a matter of discretion, we shall defer any consideration of the issue at this time because another trial justice on another record may take a different view of the alleged spontaneity.

The defendant's appeal is sustained, the judgment of conviction appealed from is vacated, and the case is remanded to the Superior Court for a new trial.

Appendix

Super.R.Crim.P. 26.3: **"Rape and sexual offenses—Proof of prior sexual conduct of complainant.**—If a defendant who is charged with the crime of rape or any other sexual offense intends to introduce proof that the complaining witness has engaged in sexual activities with other persons, he shall give notice of his intention to the court and the attorney for the state. The notice shall be given prior to the introduction of any evidence of such fact; it shall be given orally out of the hearing of spectators and, if the action is being tried by a jury, out of the hearing of the jurors. Upon receiving such notice, the court shall order the defendant to make a specific offer of the proof that he intends to introduce in support of this issue. The offer of proof, and all arguments relating to it, shall take place outside the hearing of spectators and jurors. The court shall then rule upon the admissibility of the evidence offered."

G.L. 1956 (1981 Reenactment) § 11–37–13, as enacted by P.L. 1979, ch. 302, § 2: **"Prior sexual conduct of complainant—Admissibility of evidence.**—If a defendant who is charged with the crime of sexual assault intends to introduce proof that the complaining witness has engaged in sexual activities with other persons, he or she shall give notice of his intention to the court and the attorney for the state. The notice shall be given prior to the introduction of any evidence of such fact; it shall be given orally out of the hearing of spectators and, if the action is being tried by a jury, out of the hearing of the jurors. Upon receiving such notice, the court shall order the defendant to make a specific offer of the proof that he or she intends to introduce in support of this issue. The offer of proof, and all arguments relating to it, shall take place outside the hearing of spectators and jurors. The court shall then rule upon the admissibility of the evidence offered."