ADVISORY OPINION TO THE HOUSE
OF REPRESENTATIVES.

83–265–M.P.

Supreme Court of Rhode Island.

Nov. 8, 1983.

Dorothy L. Lohmann, Providence, R.I. (Rape Crisis Center), amicus curiae.

November 3, 1983

To the Honorable, the House of Representatives

of the State of Rhode Island and

Providence Plantations

In accordance with the provisions of section 2 of article XII of the amendments to the Constitution of the State of Rhode Island, we, the undersigned justices of the Supreme Court, submit our response to an inquiry embodied in a resolution passed by the House of Representatives at its January 1983 session on May 10, 1983. The inquiry centers on House bill No. 83–H–5134, which was introduced on January 13, 1983, and referred on the same day to the House Committee on Judiciary. The bill seeks to amend G.L.1956 (1969 Reenactment) chapter 17 of title 9, which is entitled "Witnesses," by adding another section to the chapter. The proposed section would be known as § 9–17–24. Accompanying the bill is an explanation of its contents that was prepared by the Legislative Council. The council's explanation states, "This act would make all communications privileged between a sexual assault victim and a sexual assault counselor."

On May 10, 1983, Representative Jeffrey J. Teitz, chairman of the House Committee on Judiciary, reported to the floor House bill No. 83–H–5134 (Substitute A) with the committee's recommendation that the substitute bill be passed and further consideration of the original bill be indefinitely postponed. Unanimous consent was given to the chairman's request that immediate consideration be given to the committee's recommendation, and thereafter it was unanimously voted to pass Substitute A and postpone indefinitely further consideration of the bill as originally introduced.

House bill 83–H–5134 (Substitute A) embodies the request for an advisory opinion. The resolution indicates that there are presently pending in the House Judiciary Committee two legislative proposals dealing with the question of the degree of confidentiality that would be legislatively accorded to communications between a victim of a sexual assault and a sexual-assault counselor or a rape crisis center. The two proposals are identified in the resolution as Proposed Amendment A and Proposed Amendment B. The definitional portions of both proposed amendments, to wit, "Rape crisis center," "Sexual assault counselor," "Sexual assault victim," and "Confidential communication" are virtually identical and are set forth in the appendix to this opinion.

The single significant difference between the two proposed amendments concerns the proposed § 9–17–24(B), which is entitled "Privileged communications." In describ-

ing privileged communications, Proposal A states:

"In the trial of every cause, both civil and criminal, no sexual assault counselor shall be competent to testify concerning any confidential communication without the prior written consent of the sexual assault victim, nor shall a sexual assault counselor or rape crisis center be required to disclose to the court any records, notes, memoranda, or documents containing confidential communications without the prior written consent of the sexual assault victim."

In dealing with privileged communications, Proposal B tracks the language found in § 9–17–24(B) but goes on to create an exception that is described in Proposal B as an additional section, that is, § 9–17–25, which reads as follows:

"*9–17–25. Right of defendant to seek exception to confidentiality.*— Notwithstanding the provisions of section 9–17–24(B), a defendant in a criminal proceeding may petition the trial justice to issue a subpoena and/or a subpoena duces tecum requiring the appearance of a sexual assault counselor or other representative of a rape crisis center and/or the production of records, notes, memoranda or documents in their possession. Prior to issuance of said subpoena or subpoena duces tecum, the trial justice shall require the defense to show that there is reason to believe that the witness knows and/or the material sought contains information which is relevant to a material issue in the case. A witness responding to such a subpoena shall be interviewed, and/or material produced in response to such a subpoena duces tecum shall be reviewed in camera by the trial justice without counsel present. If the trial justice determines that the witness knows and/or the material contains evidence which would be clearly exculpatory in nature, then the trial justice shall make it known to counsel who shall be permitted to present such evidence at trial through the appropriate witnesses. If the trial justice finds that no such evidence is possessed by the witness or contained in the material, then the trial justice shall quash the subpoena or subpoena duces tecum."

The House of Representatives has asked the undersigned for their advice about whether Proposal A or Proposal B or both violate the rights of an accused guaranteed by the United States Constitution's Sixth Amendment in state criminal proceedings through the provisions of the Fourteenth Amendment and by art. I, sec. 10, of the Rhode Island Constitution. In its pertinent part, sec. 10, like its federal counterpart, the Sixth Amendment, guarantees an accused in a criminal prosecution the right to confront the prosecution's witnesses and the right to have compulsory process issue as well as the right to offer testimony of witnesses in his behalf and compel their attendance, if necessary. *State v. Counts,* R.I., 452 A.2d 1141, 1143 (1982); *State v. Anthony,* R.I., 422 A.2d 921, 923–24 (1980).

At this point, we would acknowledge the receipt on September 23, 1983, of a letter from Representative Elizabeth Morancy, a member of the House Judiciary Committee, to the Chief Justice and the submission by the Rhode Island Rape Crisis Center, Inc., of a document entitled "Notice and Statement of Opposition to Issuance of an Advisory Opinion." The Representative, who describes herself as the "principal sponsor" of the "absolute confidentiality" provision found in House bill No. 83–H–5134, states that the Proposed Amendment A was defeated in committee and that there is thus no legislation pending that would justify any response to the inquiry referred to above. The center's statement of opposition also refers to the committee's action and says that the defeat occurred on April 6, 1983. It also reports that the so-called Proposed Amendment B has never been introduced in either branch of the General Assembly.

The center also points to the passage of House bill No. 83–H–5981, Substitute A, which created a special legislative commission "to study privileged communication."

The fifteen-member commission is due to submit its report by March 1, 1984. The center suggests that we defer any response to the House resolution until such time as the commission has completed its study. It also contends that the pending request must go unanswered because it would require us to indulge in factual assumptions.

■ We are well aware that the justices of the Supreme Court are constitutionally obligated to give their written opinions to either branch of the General Assembly only when the question propounded concerns the constitutionality of pending legislation. We are also quite cognizant that in giving such advice we cannot indulge in factfinding.

■ We are not privy to what actually occurred whenever the House Judiciary Committee met during the January 1983 session to discharge its official duties. However, we are confronted with the fact that we have been presented with a duly certified resolution from the House of Representatives, which expressly states that there is pending before the body two proposed amendments to chapter 19 of title 7, either one of which would serve as a substitute for the original House bill 83–H–5134. This representation embodied in the resolution creates a presumption of regularity that we, as members of a coordinate branch of government, are bound to honor. *Opinion to the Governor,* 95 R.I. 109, 185 A.2d 111 (1962). Consequently, we will respond to the inquiry now before us, persuaded that the inquiry presents a pure question of law, and at no time hereafter shall we be indulging in any exercise of our factfinding processes. Hereinafter we shall speak only in terms of the Sixth Amendment, having

in mind that the pertinent language in sec. 10 of art. I is identical to that found in the Sixth Amendment.

Each of the proposed bills seeks to protect from public scrutiny the confidential conversations conducted between sexual-assault victims and their counselors. These legislative efforts are a further response to the growing awareness that a sexual assault is a crime of violence that may have a lasting effect upon the victim.

In 1979, the Rhode Island Legislature enacted G.L.1956 (1981 Reenactment) § 11–37–13 [1] relating to the admissibility of evidence of the prior sexual conduct of the complainant. Commonly known as a "rape-victim shield" statute, the law limits the ability of a defendant to introduce evidence relating to the victim's sexual conduct with others. This law is designed to protect the victims from being subjected to psychological or emotional abuse in court as a price for their cooperation with the prosecuting authorities. *State v. Lemon,* R.I., 456 A.2d 261, 264 (1983). The proposed bills echo these concerns by restricting the introduction of evidence that may be obtained from the examination of sexual-assault counselors or the records of a rape crisis center.

However, while protecting the sexual-privacy rights of victims, *see, e.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and the confidentiality of sensitive discussions, this type of legislation also conflicts with the interest of society in the facilitation of justice. Its policy of privilege impedes the ability to present a defense by limiting the array of evidence. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Washington v. Tex-*

---

1. General Laws 1956 (1981 Reenactment) § 11–37–13 provides: "Prior sexual conduct of complainant—Admissibility of Evidence.—If a defendant who is charged with the crime of sexual assault intends to introduce proof that the complaining witness has engaged in sexual activities with other persons, he or she shall give notice of his intention to the court and the attorney for the state. The notice shall be given prior to the introduction of any evidence of such fact; it shall be given orally out of the hearing of spectators and, if the action is being tried by a jury, out of the hearing of the jurors. Upon receiving such notice, the court shall order the defendant to make a specific offer of the proof that he or she intends to introduce in support of this issue. The offer of proof, and all arguments relating to it, shall take place outside the hearing of spectators and jurors. The court shall then rule upon the admissibility of the evidence offered."

*as,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

The constitutionality of "rape-victim shield" statutes has been considered by many courts and they have been found compatible with the defendant's Sixth Amendment rights. *See generally, State v. Lemon,* R.I., 456 A.2d 261 (1983); *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978). However, these proposals vary in their dual concerns of having rape victims come forward and testify under protection from unnecessary indignities and needless probing into their respective sexual histories while preserving the well-established Sixth Amendment rights of the defendant.

▮ The rights contained in the Sixth Amendment and sec. 10 of art. I are not absolute. For example, there is no constitutional right to introduce irrelevant, immaterial, or prejudicial evidence. *Scales v. United States,* 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782, *reh. denied,* 366 U.S. 978, 81 S.Ct. 1912, 6 L.Ed.2d 1267 (1961); *State v. Bowden,* 113 R.I. 649, 657, 324 A.2d 631, 637 (1974). Again, the rule barring use of hearsay evidence limits the admissibility of out-of-court statements although they may be relevant. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *State v. Santos,* R.I., 413 A.2d 58 (1980).

The Supreme Court has considered the defendant's right to confront the witnesses against him and state exclusionary rules in *Davis v. Alaska* and *Washington v. Texas,* both *supra.* In each case there was a proposal of a complete ban on certain types of evidence. Both times the Supreme Court ruled it improper to ignore so completely the interests of the defendant.

*Davis v. Alaska* involved an Alaska state statute that denied the right of a defendant to offer the juvenile record of a witness into evidence. The defendant wanted to use this evidence to impeach the prosecution's star witness by showing bias. 415 U.S. at 309, 94 S.Ct. at 1107, 39 L.Ed.2d at 349–50.

The Court recognized the legitimacy of the state policy of protecting juveniles and their families from embarrassment. *Id.* at 319, 94 S.Ct. at 111–12, 39 L.Ed.2d at 355. Yet they held that this consideration was "outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness." *Id.* The court in *State v. Myers,* 115 R.I. 583, 589–90, 350 A.2d 611, 614 (1976), took a similar position, holding that the right to attack the credibility of a witness for the prosecution through the introduction of his juvenile record falls within the constitutional guarantees of the Sixth Amendment and the guarantees of the state constitution.

*Davis* adhered to the rule established earlier in *Washington v. Texas,* which considered the propriety of a Texas statute forbidding the use of testimony offered by the accomplice of a defendant. The Supreme Court held that this law unduly hampered the ability of a defendant to present a defense.

"The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. * * * Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to protect his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. at 19, 87 S.Ct. at 1923, 18 L.Ed.2d at 1023.

These cases are positive proof that a blanket denial of a defendant's right to raise issues or call witnesses at trial can violate the Sixth Amendment. This court has made a similar determination. Recently, in *State v. Pari,* R.I., 430 A.2d 429 (1981), the court balanced the Fifth Amendment rights of a witness with the Sixth Amendment rights of a defendant to present a defense. The defendant in *Pari* wanted a police officer to testify about prior inconsistent statements made by the prosecution's prime witness. *Id.,* 430 A.2d at 431. The officer

informed the court that he would assert his Fifth Amendment privilege against self-incrimination. *Id.*

The trial justice's termination of questioning once the privilege was asserted was faulted as the court observed that

"the assertion of a privilege against self-incrimination does not end the inquiry. It is the function of the trial to determine whether the privilege is properly asserted. In this connection the trial justice cannot defer to fanciful assertions of a privilege by the witness." *Id.,* 430 A.2d at 432.

The importance of the ability of the trial court to weigh the privileged evidence against the defendant's rights has also been applied to a restrictive rape-victim shield statute. The New Hampshire statute denied *any* evidence of the sexual history of the victim. *State v. Howard,* 121 N.H. 53, 58, 426 A.2d 457, 460 (1981), held that this "legislative prohibition of a certain class of evidence, even for the purpose of preventing a witness from suffering embarrassment on the stand, should not limit the Sixth Amendment right of a defendant to confront the witness against him."

Here, Proposal A, absent the victim's consent, absolutely bars the introduction of a class of evidence. On the other hand, Proposal B strikes a more equitable balance between the conflicting rights involved. By providing for an *in camera* hearing, the trial justice will ensure that no sensitive and irrelevant evidence is presented to the trier of fact.

The balance struck in Proposal B follows the dictate of *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In *Nixon,* the President, besieged by the Watergate episode, claimed an absolute privilege for all communications he had with his aides. The Supreme Court held that when such a claim is made, confrontations with other values arise. "[W]e find it difficult to accept the argument that even the very important interest in confidentiality of Presidential communications is significantly diminished by production of such ma-

terial for *in camera* inspection with all the protection that a district court will be obliged to provide." *Id.* at 706, 94 S.Ct. at 3107, 41 L.Ed.2d at 1063; *see also, In re Farber,* 78 N.J. 259, 274, 394 A.2d 330, 337, *cert. denied,* 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978).

This conclusion protects the fundamental idea that there is a "need to develop all relevant facts in the adversary system * *. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." *United States v. Nixon,* 418 U.S. at 709, 94 S.Ct. at 3108, 41 L.Ed.2d at 1064.

■■■■ In summary, we advise Your Honors that the absolute cloak of confidentiality provided in Proposed Amendment A violates the federal and state constitutional rights of an accused to confront his or her accusers, to obtain compulsory process, and to offer testimony. Since Proposed Amendment B strikes the requisite balance between an accused's constitutional right at trial and the sexual-assault victim's need for confidentiality in regard to any conversations between the victim and the described counselor and center, we respond to this facet of Your Honors' inquiry in the negative.

/s/Joseph A. Bevilacqua, C.J.
/s/Thomas F. Kelleher, J.
/s/Joseph R. Weisberger, J.
/s/Florence K. Murray, J.
/s/Donald F. Shea, J.

## APPENDIX

1. "Rape crisis center" shall mean any publicly or privately funded agency, institution, or facility, duly incorporated under the laws of this state, having as its purpose reducing the trauma of sexual assault to sexual assault victims and their families through crisis intervention, counseling, medical and legal information, and dissemination of educational information pertaining to the crime of sexual assault.

2. "Sexual assault counselor" shall mean a person who (a) has undergone twenty (20) or more hours of training from a rape crisis center which shall include but not be limited to the following areas: law, medicine, societal attitudes, crisis intervention, counseling techniques, and referral services; and, (b) is either a staff member, or under the supervision of a staff member, of a rape crisis center.

3. "Sexual assault victim" shall mean a person who consults a sexual assault counselor for the purpose of securing information, counseling, or assistance concerning a mental, physical, or emotional condition caused by a sexual assault.

4. "Confidential communication" shall mean any communication between a sexual assault victim and a sexual assault counselor obtained in his or her professional capacity in the course of rendering assistance or counseling to the sexual assault victim.