**Supreme Court**

No. 2011-309-Appeal.
(PC 05-6410)

William Lamont Thomas        :

v.        :

Omar Proctor et al.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

William Lamont Thomas        :

v.            :

Omar Proctor et al.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The plaintiff, William Lamont Thomas, sustained injuries when he was shot by the defendant, Omar Proctor, an officer with the Providence Police Department.  The plaintiff appeals from a judgment entered after a jury verdict in favor of the defendant in the plaintiff's civil action seeking damages.  The plaintiff asserts that he was unfairly prejudiced when the trial justice allowed the defendant to introduce into evidence a redacted police department database report.[1]  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] The plaintiff, in his Rule 12A statement, additionally asserted that the trial justice erred by not allowing him to ask for numeric damages regarding the pain and suffering experienced by plaintiff; however, during oral argument, plaintiff conceded that this issue was moot in light of the jury verdict.

# I

## Facts and Procedural History

At approximately 6 p.m. on December 20, 2004, defendant was patrolling the vicinity of Broad Street when he saw plaintiff in front of a video store. The defendant testified that he was aware that there was an outstanding warrant for plaintiff, and that, therefore, he requested assistance to arrest plaintiff. Shortly thereafter, Ptlm. Frank Newton arrived at the scene. After plaintiff exited the store and entered his vehicle, Ptlm. Newton walked toward the driver's side of plaintiff's car. The defendant also approached the vehicle, opened the driver's side door, and ordered plaintiff to step out of the vehicle.[2] The defendant testified that plaintiff had been "fumbling in his waistband," which caused defendant to conduct a pat-down search for weapons. However, as defendant "approached the front area of [plaintiff's] waistband area where he * * * was observed fumbling," plaintiff "turned and pushed [defendant] down," "back peddl[ed], fumbling in his waistband area," and then "began running."

The defendant testified that, when he got up, he unholstered his firearm because he thought plaintiff was armed and began chasing after him. The defendant testified that, while he was running, he observed plaintiff's "hand c[o]me out and [he] believed [plaintiff] was going to fire at [him]," so he yelled, "Stop," and "fire[d] a round," but missed and plaintiff kept running. According to defendant, he heard something fall and subsequently picked up a handgun that he believed to be Ptlm. Newton's. The defendant averred that plaintiff "was still fumbling in his waistband area as he was running."

---

[2] The plaintiff and Ptlm. Newton both testified that defendant pulled plaintiff out of his car; however, defendant denied this. In a statement plaintiff gave to the police the day after the shooting, however, he merely stated that he "stood out of the car."

The defendant further testified that he pursued plaintiff through several empty lots to Public Street, where plaintiff ran behind a house. As plaintiff emerged from the back yard, he encountered defendant in a driveway. According to defendant, he yelled at plaintiff to stop, but plaintiff continued toward him with his hands down.[3] In response to plaintiff's advancement and defendant's professed belief that plaintiff was armed, defendant made a "[s]plit second" decision and "fired one round center mass."[4]

Doctor Elizabeth Laposata, a forensic pathologist, testified regarding plaintiff's injuries. She stated that the bullet had grazed the back of plaintiff's right wrist, entered the left side of his sternum, tunneled under his skin and "contus[ed] the lung," exited the space below his left rib, and then reentered his left upper arm in the triceps muscle, where it remained. The plaintiff testified that he remained in the hospital for three or four days following the shooting. He further attested that, at the time of the trial, he still had pain in his chest and his arm, that, "because of where the bullet is [lodged] in [his] arm, it's hard to position [in] normal positions, just laying, sitting down, resting [his] arm," and that he cannot lift heavy items without pain. The plaintiff also stated that he had been having nightmares, causing him to have trouble sleeping for six years since the event occurred.

On December 16, 2005, plaintiff filed a civil complaint against defendant in the Superior Court.[5] A jury trial commenced on January 11, 2011, after which the jury found that plaintiff did

---

[3] The defendant admitted during the trial that the area was not well lit. The plaintiff testified that, when he saw defendant, he put his hands up in the air and said, "I'm giving up." In plaintiff's deposition, he stated: "After I was shot, I looked down at my chest. I seen the blood coming out. [The defendant was] yelling, 'Get on the ground.' He's shaking. * * * I'm thinking he's going to shoot me again."

[4] The defendant testified that officers are trained at the police academy to aim for "center mass," which he described as "one of the largest target areas to aim for."

[5] The plaintiff also named Stephen Napolitano, in his capacity as the treasurer of the City of Providence, as a defendant.

not prove "by a fair preponderance of the evidence that * * * [defendant] acted unreasonably under the circumstances when he shot and injured [plaintiff]," and a verdict was entered in defendant's favor.  Subsequently, plaintiff filed a motion for a new trial, which was denied after a hearing held on March 7, 2011.  The plaintiff filed a notice of appeal on March 22, 2011.[6]

Additional facts will be provided as may be necessary to discuss the issues raised on appeal.

## II

## Standard of Review

Rule 403 of the Rhode Island Rules of Evidence states that, even if evidence is considered relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "It is well settled that this Court will not disturb a trial justice's ruling on an evidentiary issue unless that ruling constitutes an abuse of the justice's discretion that prejudices the complaining party." State v. Tetreault, 31 A.3d 777, 782 (R.I. 2011) (quoting State v. Dellay, 687 A.2d 435, 439 (R.I. 1996)).  This Court has said that "a trial justice's discretion to exclude evidence under Rule 403 must be used sparingly," and "[i]t is only when evidence is marginally relevant and enormously prejudicial that a trial justice must exclude it." State v. DeJesus, 947 A.2d 873, 883 (R.I. 2008).

---

[6] Judgment was not entered in this case until June 26, 2012.  Although defendant filed his appeal on March 22, 2011, this Court will treat defendant's premature appeal as timely. See Chapdelaine v. State, 32 A.3d 937, 941 n.1 (R.I. 2011).

## III

## Discussion

The central issue at the trial was whether Officer Proctor acted reasonably when he shot Thomas. The defendant testified that, at the time of this incident, he "was aware that [plaintiff] had been charged with possession of a sawed off shotgun," having acquired this information from the police database. Subsequently, the trial justice admitted into evidence a redacted version of plaintiff's "Known Persons Intelligence Report" (report), the document from which defendant had received the database information. The report, as entered, included plaintiff's basic biographical information, his mug shot, and a reference to his arrest for possession of a shotgun in 1992. All other references to his previous arrests were redacted, however.

On appeal, plaintiff argues that the trial justice erred by admitting the "picture of the [p]laintiff from the [p]olice department's data base where it was written under his picture that * * * the [p]laintiff had been charged with carrying a sawed off shotgun" because "[t]his charge was ultimately dismissed," and it "was highly prejudicial, outweighed its probative value, was too remote in time and was not a conviction." The defendant counters that the report was introduced to show the jury that he believed his life was in jeopardy at the time of the shooting, that, therefore, his actions in shooting plaintiff were reasonable, and that, accordingly, the exhibit was not unfairly prejudicial.

During the direct examination of defendant, he was asked whether he was aware of any gun offenses with which plaintiff had been charged, to which he responded, "I was aware that he was charged with possession of a sawed off shotgun." During cross-examination, plaintiff's counsel questioned defendant, "You know, don't you, that [plaintiff] was never convicted of that crime of carrying a gun?" to which he answered, "I didn't know if he was ever convicted." After

- 5 -

asking again and having defendant affirm his previous answer, plaintiff's counsel requested that

the report be marked for identification, to which defendant's counsel objected unless it was

going to be entered as a full exhibit. The following colloquy was held at sidebar:

> "THE COURT: Why can't we put this in?
> "[Plaintiff's Counsel]: I'm not putting it in. I'm asking him to identify it to see if there is anything that says he is convicted of carrying a gun.
> "[Defendant's Counsel]: Then it's admitted for substantive purposes as a full exhibit. The witness testified he didn't do a criminal history. He didn't know until [plaintiff's counsel] -- I don't know how he knows by way of a question. It's in evidence that he says, I didn't know. He had not been convicted. So it's in as an exhibit or it's not in. If it's not in as an exhibit, the witness can't use it.
> "THE COURT: You can put into evidence that he wasn't convicted. It's easy enough to mark it.
> "[Plaintiff's Counsel]: I understand that, your Honor. I'm not going to put it in because it has more of a criminal record that we talked about. That's why, obviously, I don't want to put it in. When he says that he does not, he already said he admitted that he's known to carry a gun. Well, he's never been convicted of carrying a gun.
> "THE COURT: What was his knowledge at the time? So the choice is either it gets admitted or it's not asked."

The trial justice then sustained the objection, and the trial continued.

During the redirect examination of defendant, his counsel also requested that the report

be marked for identification, to which plaintiff's counsel objected:

> "[Defendant's Counsel]: Now, you testified on direct examination that at some point early on before you actually knew [plaintiff], you came across a photograph and information on him in a police data base. Is that correct?
> "[Defendant]: That's correct.
> "[Defendant's Counsel]: May I have this marked for identification?
> "* * *
> "[Plaintiff's Counsel]: I'm going to object, your Honor.
> "THE COURT: Okay.
> "[Defendant's Counsel]: I haven't moved it full.

- 6 -

"THE COURT: Can I just see the exhibit? Okay. Counsel at this point can proceed. It's marked for I.D. I will hear counsel's objection if it's in fact going to be moved in for full."

Subsequently, defendant's counsel requested that the report be marked as a full exhibit, to which plaintiff's counsel objected, and the following exchange occurred at sidebar:

"[Plaintiff's Counsel]: Your Honor, my objection, obviously, is to the information of possession of cocaine, possession of marijuana. Everything else on there we kept out and the reason for that, obviously, and I never got into it. He got into what he did and everything else. All I asked him was how did you know him. He brought up carrying a weapon. I said how he knew. He said he looked up the database. If he wants to say database says he's charged with a weapon, I have no problem. I think it's prejudicial.

"[Defendant's Counsel]: It's what he pulled up on his computer screen and it does include the possession of the shotgun.

"[Plaintiff's Counsel]: Let him testify to it. You can ask him is that where you found possession of a shotgun on that.

"THE COURT: Okay. The Court is convinced from the cross-examination there was much more than just one question that involved what he looked at prior. Also what he looked at prior does go to what his reasonable belief was at the time. Therefore, the Court, over counsel's objection, is going to permit this to be entered as an exhibit in full.

"[Plaintiff's Counsel]: It's not prejudicial, Judge?

"THE COURT: Absolutely, but it's all a balancing."

The redirect examination continued, after the conclusion of which the trial justice stated:

"THE COURT: Based on the testimony on [the report], what the Court will require is prior to that exhibit going to the jury that the other pieces of it and the handgun portion be redacted. The pictures can be there, everything else, and the Court will give the jury later a curative instruction that they are not to take it one way or another that there is blacked out spaces on that.

"[Plaintiff's Counsel]: Thank you, your Honor."

This Court has recognized that mug-shot photographs present a danger of unfair prejudice because they "generally indicate past criminal behavior and are likely to create in the minds of jurors an inference of criminal behavior." State v. Dinagen, 639 A.2d 1353, 1356 (R.I. 1994).

- 7 -

Because of this inherent danger, we have, in the criminal law context, "adopted three criteria that a trial justice should consider prior to deciding to admit such photographs." Id. These criteria "are intended as a basis upon which attorneys may argue for or against admission of the evidence, as well as a basis for the trial justice's decision." Id.

> "The three criteria are: '(1) the prosecution must have a demonstrable need to introduce the photographs; (2) the photographs themselves, if shown to the jury, must not imply that defendant had a prior criminal record; and (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.'" Id. (quoting State v. Lemon, 456 A.2d 261, 265 (R.I. 1983)).

Even if a mug-shot photograph is admitted erroneously, however, it does not constitute reversible error and "is not prejudicial when the state presents other competent evidence from which the jury could convict the defendant." Dinagen, 639 A.2d at 1357. The admission of a mug shot "may be harmless if 'it is not reasonably possible that such evidence would influence an average jury on the ultimate issue of guilt or innocence.'" Id. (quoting State v. Bowden, 439 A.2d 263, 269 (R.I. 1982)). Further, we have "generally held that when objectionable evidence also has come before the jury through other avenues, the improper admission of the evidence was not prejudicial." State v. Robertson, 740 A.2d 330, 336 (R.I. 1999). In Dinagen, 639 A.2d at 1358, we held that, even if mug shots were impermissibly admitted because the jury could then infer prior criminal conduct, it is not fatal where evidence of the defendant's prior convictions came before the jury in other ways.

We recognize that, in the case under review, the jury was tasked with weighing defendant's civil liability rather than plaintiff's criminal liability. Nevertheless, the introduction of mug-shot photographs clearly has the potential of unfairly tipping the scales of justice in favor of one party or the other. Here, the reasonableness of Officer Proctor's action was at issue and

was determined by what he knew at the time of the shooting. Officer Proctor had already testified about Thomas's previous arrest for possession of a shotgun, therefore, the mug shot did not inform the jury of something of which it was not already aware. This, in itself, eliminated the high level of prejudice that most mug-shot photographs carry when admitted. Moreover, this argument was not sufficiently articulated at trial.

After a thorough review of the record, and to the extent that the issue was properly preserved for appellate review, we are of the opinion that the trial justice's decision to admit the redacted report was well within his discretionary authority.[7] As the trial justice explained in his instructions to the jury, Officer Proctor's knowledge at the time of the shooting regarding Thomas's prior arrest for possession of a shotgun was relevant to the jury's determination of "whether or not another reasonable police officer standing in the shoes of the defendant police officer confronted with the same circumstances and having the same information available to the defendant at the time of the incident would have acted in the same or similar fashion."

The plaintiff's contention that the report containing his mug shot and the arrest for possession of a shotgun was highly prejudicial and outweighed its probative value was properly considered by the trial justice. Not only does the record show that the trial justice determined that the report was indeed prejudicial, albeit not unfairly so, he ordered that the report be redacted to remove from the exhibit all references to the plaintiff's arrests except for the possession of a shotgun charge. Indeed, the trial justice addressed the only objection to the report articulated by the plaintiff, viz., the inclusion in the report of the plaintiff's arrests for possession of illegal substances. The plaintiff explicitly stated, "[M]y objection, obviously, is to

_____

[7] We note that the trial justice stated that he would provide the jury with a curative instruction regarding the "blacked out spaces" on the redacted report; however, it seems as though the report was redacted in such a way that it neither contained any black streaks nor made it apparent that there were other charges listed on the report.

the information of possession of cocaine, possession of marijuana." Significantly, the plaintiff said that he had "no problem" if the defendant testified that the "database says [the plaintiff was] charged with a weapon." Further, when the trial justice declared his final determination that the report would be redacted before being made available to the jury but that the photographs would remain, the plaintiff's only response was, "Thank you, your Honor." No protestations were made nor did the plaintiff suggest that the redactions did not satisfactorily address his objections. Moreover, we are satisfied from the trial justice's comments that he appropriately balanced the probative value of the report against the danger of unfair prejudice. Thus, we perceive no error in the trial justice's determination to admit the redacted report.

## IV

## Conclusion

For the reasons set forth in this opinion, we hold that the trial justice did not err in denying the plaintiff's motion for a new trial. In accordance with the foregoing, we affirm the judgment of the Superior Court, and we remand the papers in this case to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

---

**TITLE OF CASE:**  William Lamont Thomas v. Omar Proctor et al.

**CASE NO:**  No. 2011-309-Appeal.
(PC 05-6410)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  April 17, 2013

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT:**

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Robert Testa, Esq.

For Defendant:  Joseph F. Penza, Jr.